STATE of Wisconsin, Plaintiff-Respondent,

v.

John R. MALONEY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP2180. Oral argument April 12, 2005. —Decided June 10, 2005.*

2005 WI 74

(Also reported in 698 N.W.2d 583.)

For the defendant-appellant-petitioner there were briefs by *Lew A. Wasserman* and *Kies & Wasserman,* Milwaukee, and oral argument by *Lew A. Wasserman.*

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the brief was Peggy A. Lautenschlager, attorney general.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, John Maloney, seeks review of a published decision of

the court of appeals affirming a circuit court order denying his motion for postconviction relief.[1] He contends that he was afforded ineffective assistance of trial counsel.

¶ 2. Maloney asserts three areas of deficient performance: (1) failing to challenge the admissibility of videotape evidence based on an alleged violation of SCR 20:4.2 by the special prosecutor; (2) failing to challenge the admissibility of videotape evidence under Wisconsin's Electronic Surveillance Control Law; and (3) impermissibly inviting the State's lead investigator to comment on Maloney's credibility. Because he has failed to demonstrate deficient performance, we ultimately conclude that Maloney has not shown ineffective assistance of trial counsel.

¶ 3. However, we do not affirm the decision of the court of appeals at this time. Rather, we retain jurisdiction and ask the parties to file additional briefs on the following two issues:

(1) Whether this court has authority to remand to the circuit court for a motion for postconviction relief based upon the interest of justice.

(2) If so, whether this court should act upon that authority and remand as described above.[2]

---

[1] *State v. Maloney*, 2004 WI App 141, 275 Wis. 2d 557, 685 N.W.2d 620 (affirming an order of the circuit court for Brown County, Peter J. Naze, Judge).

[2] Although referenced by the court at oral argument, the question of whether Maloney is entitled to a new trial in the interest of justice was not before us. It was neither raised nor briefed by the parties. Accordingly, we ask for additional briefs and direct the parties' attention to the order in this case issued on this date.

I

¶ 4. The facts for the purposes of this review are as follows. John and Sandra Maloney were married in 1978 and had three children together. John Maloney (hereinafter "Maloney") was employed as a detective with the Green Bay Police Department and also worked as an investigator for the Brown County Arson Task Force. In May of 1997, he moved out of the family home. Maloney subsequently filed for divorce from his wife Sandra.

¶ 5. On February 11, 1998, Sandra's corpse was discovered on the living room couch. Her death was caused by the combination of a blunt force blow to the back of the head, manual strangulation, and suffocation. The couch, along with Sandra's body, was then set on fire.[3]

¶ 6. Investigators concluded that Sandra's death was a homicide and her estranged husband, Maloney, became a suspect. In May of 1998, Maloney's then girlfriend, Tracy Hellenbrand, encouraged him to hire an attorney. Maloney retained Attorney Gerald Boyle, who promptly notified Special Prosecutor Joseph Paulus of his engagement.[4] Paulus sent Boyle a letter indicating that Maloney was a suspect in the case.

¶ 7. During the course of the murder investigation, Hellenbrand approached the State and offered to wear a concealed recording device in an attempt, ac-

---

[3] Initial reports from the Green Bay Fire Department and the Brown County Arson Task Force actually labeled the fire an accident. Dr. Gregory Schmunk, the medical examiner in the case, has since indicated that this evidence was withheld from him, which may have affected his ruling.

[4] The Brown County District Attorney recused himself from the case because Maloney was a police officer in his jurisdiction. Joseph Paulus, the Winnebago County District Attorney, was appointed Special Prosecutor.

cording to her, to prove Maloney's innocence. Subsequent conversations that took place in Las Vegas between Hellenbrand and Maloney were videotaped, under supervision of Wisconsin authorities, with Hellenbrand's consent and cooperation.

¶ 8. Rather than proving Maloney's innocence, the recorded conversations contained inculpatory statements from him. At one point in the videotape, Maloney admitted to being at the scene of the death. He claimed, however, that his wife's death resulted from an accidental fall, that it occurred early in the morning, and that the fire might have been started when a candlestick fell over. Maloney also stated that he went to his wife's house to talk about the divorce. He wanted to get it over with because he was "sick of the delays" and was doing this for the children.

¶ 9. After the Las Vegas recordings, Maloney was arrested and charged with first-degree intentional homicide, arson, and mutilation of a corpse, all in connection with the murder of his wife. He filed a pretrial motion seeking suppression of the videotaped conversations on grounds that the statements had been involuntary, that the government had engaged in outrageous conduct in obtaining the statements, and that his right to counsel had been violated. The circuit court denied the pretrial motion.

¶ 10. At trial, portions of the Las Vegas recordings were played for the jury. Apparently, Paulus was personally involved in the editing process.[5] Despite this videotape evidence, Maloney maintained his innocence

[5] Paulus sent the hours of recordings to a private, outside company, supposedly to cut them down for time, not to alter their content. However, there was an initial $27,000 editing bill, and a note from Paulus to the editor explaining that he had

and asserted that Hellenbrand was responsible for the murder. The jury ultimately convicted Maloney of the three charges. He appealed, renewing his challenge to the admissibility of the videotaped conversations. The court of appeals rejected all of Maloney's arguments and affirmed his convictions. *State v. Maloney,* No. 1999AP3069–CR, unpublished slip op. (Wis. Ct. App. Sept. 6, 2000).[6]

¶ 11. Maloney then hired new counsel and filed a motion for postconviction relief under Wis. Stat. § 974.06 (1997–98), alleging ineffective assistance of trial counsel.[7] He maintained that counsel should have challenged the admissibility of the videotape evidence based on the special prosecutor's alleged violation of SCR 20:4.2 and based on Wisconsin's Electronic Surveillance Control Law (WESCL). Additionally, he argued that counsel impermissibly invited the State's lead investigator, Kim Skorlinski, to comment on Maloney's credibility.

---

replaced, modified, or added new excerpts to be included in the tape. There was also an editor's note indicating that some of Paulus's clips were so short that they seemed choppy.

[6] Since Maloney's first appeal was decided, Paulus has been convicted of 22 counts of bribery and tax evasion and is serving a prison term of nearly five years in connection with taking bribes to fix cases. Because of concern that Paulus may have mishandled the investigation, in March 2004, the Wisconsin Department of Justice launched an independent investigation into the death of Sandra Maloney. On February 24, 2005, the Department released a report, authored by Madison Attorney Stephen Meyer, confirming that Sandra Maloney's death was a homicide and not accidental. The report is available online at http://www.doj.state.wi.us/news/maloney.pdf.

[7] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 12. The circuit court denied the motion. The court determined that the pre-charging undercover investigation of Maloney did not violate SCR 20:4.2, and even if it had, suppression was not an available remedy. It further determined that there was no violation of WESCL because Hellenbrand, being a party to the Las Vegas encounter with Maloney, consented to the surveillance. Finally, the circuit court concluded that trial counsel made sound strategic decisions in how he examined Agent Skorlinski to demonstrate to the jury that Skorlinski was closed-minded and biased against Maloney. Accordingly, it held that Maloney failed to prove ineffective assistance of counsel in any respect.

¶ 13. The court of appeals affirmed the order of the circuit court denying the motion for postconviction relief. The court of appeals did not decide whether special prosecutor Paulus violated SCR 20:4.2 because it concluded that suppression of evidence was not an available remedy for an ethics violation. *State v. Maloney*, 2004 WI App 141, ¶¶ 11–12, 275 Wis. 2d 557, 685 N.W.2d 620. Additionally, the court held that there was no violation of WESCL because Hellenbrand consented to the surveillance and Maloney offered no proof that she did so with the intent to commit an "injurious act." *Id.*, ¶¶ 15–17. Finally, the court of appeals agreed with the circuit court that trial counsel had employed a reasonable, albeit unsuccessful, strategy in his approach to Agent Skorlinksi's cross-examination. *Id.*, ¶ 22–23. Maloney filed a petition for review.[8]

---

[8] Shortly before oral argument, the Wisconsin Department of Justice sent a letter advising the court that on Saturday, March 26, 2005, the CBS Television Network devoted a segment of its news show "48 Hours" to the investigation and prosecution of Maloney. Attached to the letter was a transcript of the show. Maloney did not object to the court receiving the transcript.

## II

¶ 14. The question we address in this case is whether Maloney's trial counsel was ineffective. A claim of ineffective assistance of counsel invokes the analysis set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To find success, a defendant must demonstrate both that (1) counsel's representation was deficient; and (2) this deficiency was prejudicial. *Id.* at 687. We need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Id.* at 697.

¶ 15. Our review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State v. McDowell,* 2004 WI 70, ¶ 31, 272 Wis. 2d 488, 681 N.W.2d 500 (citing *State v. Erickson,* 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999)). We will not disturb the circuit court's findings of fact unless they are clearly erroneous. *Id.* However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law subject to independent appellate review. *Id.*

## III

¶ 16. In this case, Maloney contends that he was afforded ineffective assistance of trial counsel in three respects: (1) failing to challenge the admissibility of

---

In its letter, the Department of Justice noted that various statements in the "48 Hours" segment were attributed to Winnebago County Assistant District Attorney Michael Balskus. It then disassociated itself from Balskus, explaining that he lacked any authority to speak on behalf of the State and did not represent it in the Brown County criminal prosecution, the direct appeal, or the collateral proceedings.

the videotape evidence based on an alleged violation of SCR 20:4.2 by special prosecutor Paulus; (2) failing to challenge the admissibility of videotape evidence under WESCL; and (3) impermissibly inviting the State's lead investigator to comment on Maloney's credibility. We examine each claim in turn.

## A.

¶ 17. Maloney's first argument is that his trial counsel was ineffective for failing to challenge the admissibility of the videotape evidence based on an alleged violation of SCR 20:4.2 by special prosecutor Paulus. Supreme Court Rule 20:4.2 is an ethical rule governing the behavior of members of the Wisconsin Bar. It provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

¶ 18. According to Maloney, special prosecutor Paulus's conduct in this case constituted an egregious violation of SCR 20:4.2. He maintains that the Las Vegas videotapes should have been suppressed because Paulus knew Maloney had retained counsel, Paulus was present at the meeting when Hellenbrand agreed to the electronic surveillance, and Paulus was kept generally apprised of the undercover activities throughout the summer by Agent Skorlinski. Trial counsel's failure to make this argument, Maloney asserts, constitutes ineffective assistance of counsel.

¶ 19. The applicability of SCR 20:4.2 to the investigative stage of a criminal case is a matter of first

605

impression for this court.[9] Many courts examining the issue have held that pre-charging noncustodial contact with a represented person during a criminal investigation is permitted under the applicable rules of ethics. *See, e.g., Grievance Comm. for the Southern Dist. of New York v. Simels,* 48 F.3d 640, 647–49 (2d Cir. 1995); *In re Criminal Investigation of John Doe, Inc.,* 194 F.R.D. 375, 377 (D. Mass. 2000) (and cases cited therein); *United States v. Ward,* 895 F. Supp. 1000, 1004–05 (N.D. Ill. 1995). *See also* 2 Restatement (Third) of the Law: The Law Governing Lawyers, § 99 cmt. h at 75–76, and Reporter's Note to cmt. h at 83–86 (2000).

¶ 20. Consistent with these interpretations, the commentary to the ABA Model Rules recognizes that pre-charging investigative conduct of the type that occurred here is "authorized by law" and, therefore, is not prohibited by the rules of ethics.

> Communications authorized by law may also include investigative activities of lawyers representing governmental entities, directly or through investigative agents, prior to the commencement of criminal or civil proceedings. When communicating with the accused in a criminal matter, a government lawyer must comply with this Rule in addition to honoring the constitutional rights of the accused.

American Bar Association, *Model Rules of Professional Conduct,* Rule 4.2 cmt. at 91 (2003).

> There is much authority for the proposition that communication with represented criminal suspects as part of noncustodial interrogations, before formal proceedings are initiated, are not subject to the anticontact rule.

---

[9] Although Maloney cites two ethics opinions in support of his argument, Wisconsin Ethics Opinions, E-91–6 (1992) and E-96–3 (1997), he ultimately acknowledges that "[t]he issue presented is one that has not been directly before this court."

606

American Bar Association, *Annotated Model Rules of Professional Conduct,* Rule 4.2 at 427–28.

¶ 21. Against these authorities, Maloney cites *United States v. Hammad,* 858 F.2d 834 (2d Cir. 1988), which held a rule similar to SCR 20:4.2 applicable in a pre-charging criminal investigative setting.[10] In *Hammad,* a prosecutor issued a counterfeit subpoena for an informant, who then met with a suspect and recorded their conversation. The principal question presented to the court was "to what extent does [the "no-contact" rule] restrict the use of informants by government prosecutors prior to indictment, but after a suspect has retained counsel in connection with the subject matter of a criminal investigation." *Id.* at 839.

¶ 22. In its opinion, the *Hammad* court noted that a prosecutor is "authorized by law" to employ legitimate investigative techniques, including the use of informants, when conducting or supervising criminal investigations. *Id.* Still, it observed that in some instances prosecutors might overstep their authority and violate the ethical precepts of the "no-contact" rule. *Id.* at 839–40. Under the peculiar facts of its case, the court determined that the use of the counterfeit subpoena "contributed to the informant's becoming that alter ego of the prosecutor" and therefore violated the "no-contact" rule. *Id.* at 840. The court further recognized the exclusionary rule's applicability to "breaches of ethical precepts enforced pursuant to the federal courts' supervisory authority." *Id.* at 841. However, it declined

---

[10] *United States v. Hammad,* 858 F.2d 834 (2d Cir. 1988) has been endorsed by other jurisdictions. *See, e.g., United States v. Talao,* 222 F.3d 1133, 1139 (9th Cir. 2000); *State v. Miller,* 600 N.W.2d 457, 467 (Minn. 1999).

to suppress the recordings, reasoning that "the government should not have its case prejudiced by suppression of evidence when the law was previously unsettled in this area." *Id.* at 842.

¶ 23. The split of authorities described above is important in considering whether Maloney's trial counsel was ineffective in failing to challenge the admissibility of the videotape evidence based on an alleged violation of SCR 20:4.2. Ignorance of well-defined legal principles, of course, is nearly inexcusable. *Smith v. Singletary,* 170 F.3d 1051, 1054 (11th Cir. 1999). However, because the law is not an exact science and may shift over time, " 'the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized . . . .' " *Id.* (quoting 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 17.4, at 497 (4th ed. 1996) (citing cases));[11] *United States v. De La Pava,* 268 F.3d 157, 166 (2d Cir. 2001); *Johnson v. Carroll,* 327 F. Supp. 2d 386, 398 (D. Del. 2004).

¶ 24. In the end, we need not determine which line of cases Wisconsin will ultimately follow regarding the applicability of SCR 20:4.2 to the pre-charging

---

[11] Because a lawyer's performance is evaluated under prevailing professional norms, *see Strickland v. Washington,* 466 U.S. 668, 688 (1984), case law and treatises on legal malpractice can be instructive in our analysis. As the 11th Circuit Court of Appeals explained in *Smith v. Singletary,* 170 F.3d 1051, 1054 n. 5 (11th Cir. 1999), "ordinarily, at least, lawyers' acts or omissions that do not rise to the level of professional malpractice, a fortiori, cannot amount to a constitutional violation."

criminal investigative setting.[12] Here, we are called upon to decide the narrower question of whether Maloney's trial counsel was ineffective for failing to make this argument. As noted above, in order to establish ineffective assistance of counsel, a defendant must prove that counsel's performance was both deficient and prejudicial. *Strickland,* 466 U.S. at 687. To prove deficient performance, defendants must show that their counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

¶ 25. Judicial scrutiny of an attorney's performance is highly deferential. *Id.* at 689. After all, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* (citation omitted). As a result, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

¶ 26. In *State v. Thayer,* 2001 WI App 51, ¶ 14, 241 Wis. 2d 417, 626 N.W.2d 811, the court of appeals recognized that "counsel is not required to argue a point of law that is unclear." There, a Wis. Stat. Ch. 980 committed patient named Thayer alleged that his counsel was ineffective for failing to present evidence at a Wis. Stat. § 980.09(2)(a) probable cause hearing.

---

[12] Likewise, we need not decide whether suppression is an available remedy for an ethics violation.

*Id.,* ¶ 9. Counsel subsequently testified that he did not believe his client had the right to present evidence at such a hearing based upon his reading of *State v. Paulick,* 213 Wis. 2d 432, 570 N.W.2d 626 (Ct. App. 1997). *Id.,* ¶ 10. The court of appeals disagreed. *Id.*

¶ 27. Examining *Paulick,* the court of appeals explained that the decision's language implicitly allows for the submission of a second, independent medical examination by the committed patient. *Id.,* ¶ 15. However, the court also noted that there was no evidence in the record to suggest that Thayer requested or retained an independent medical examiner at the time of his reexamination, as required by Wis. Stat. § 980.07(1). *Id.* The court of appeals therefore concluded that counsel's understanding of *Paulick,* that he was prohibited from presenting any evidence at the probable cause hearing, was a reasonable one under the circumstances. *Id.*

¶ 28. In *State v. McMahon,* 186 Wis. 2d 68, 84, 519 N.W.2d 621 (Ct. App. 1994), the court of appeals observed that "counsel is not required to object and argue a point of law that is unsettled." McMahon was convicted of several sexual offenses involving his first cousin, including one count of incestuous intercourse, which occurred between October 10 and November 20, 1990. *Id.* at 79. On appeal, he complained that lumping together in a single count the "sheer number of incidents" which allegedly took place during that time period amounted to an improper joining of two or more criminal offenses. *Id.*[13] McMahon cited *State v. Lomagro,* 113 Wis. 2d 582, 586, 335 N.W.2d 583 (1983), for the

---

[13] There were 12 alleged incidents spread out over the course of the one-and-a-half-month period. *State v. McMahon,* 186 Wis. 2d 68, 79, 519 N.W.2d 621 (Ct. App. 1994).

proposition that duplicitous charging may deprive a defendant of jury unanimity. *Id.* He then argued that his trial counsel was ineffective for not having made such a motion. *Id.* at 80.

¶ 29. After discussing *Lomagro* at length, the court of appeals determined that the case could be reasonably analyzed in two different ways and was therefore unsettled law. *Id.* at 84. It wrote, "[a]lthough it might have been ideal for counsel to so object and assert an interpretation of *Lomagro* that would benefit his client, the fact is that he was not deficient in failing to do so." *Id.* Accordingly, the court concluded that the area of law was "murky" enough that counsel was not deficient for failing to raise the issue. *Id.* It explained, "[w]e think ineffective assistance of counsel cases should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue." *Id.* at 85.

¶ 30. Given the unclear and unsettled nature of SCR 20:4.2's applicability in Wisconsin to the pre-charging criminal investigative setting, we conclude that trial counsel's failure to challenge the admissibility of the videotape evidence on this ground did not constitute deficient performance. Although it might have been preferred for Maloney's counsel to advance the *Hammad* position in his motion to suppress, basing an ineffective assistance of counsel claim on his failure to do so would be to engage in the kind of hindsight examination expressly disavowed by the Supreme Court in *Strickland,* 466 U.S. at 689. Accordingly, we reject Maloney's first claim.

611

### B.

¶ 31. Maloney contends next that his trial counsel was ineffective for failing to challenge the admissibility of the videotape evidence under WESCL. His claim involves two sections of WESCL, Wis. Stat. §§ 968.31(2)(b) and (c). Under these provisions, it is not unlawful:

> (b) For a person acting under color of law to intercept a wire, electronic or oral communication, where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception.

> (c) For a person not acting under the color of law to intercept a wire, electronic or oral communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the United States or of any state or for the purpose of committing any other injurious act.

¶ 32. In pretrial motions, Maloney's counsel argued that Hellenbrand had been acting under color of law, which was a necessary element to the alleged *Miranda*[14] violation that counsel also raised. Counsel later explained at the postconviction *Machner*[15] hearing that it would have been futile to raise a challenge under

---

[14] *See Miranda v. Arizona,* 384 U.S. 436 (1966).

[15] Under *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), a hearing may be held when a criminal defendant's trial counsel is challenged for allegedly providing ineffective assistance. At the hearing, trial counsel testifies as to his or her reasoning on the challenged action or inaction.

Wis. Stat. § 968.31(2)(b) because Hellenbrand was a party to the communication and had consented to the videotaping.

¶ 33. The circuit court rejected counsel's *Miranda* argument, concluding that Hellenbrand had not been acting under color of law. Maloney now asserts that trial counsel should have argued in the alternative that if Hellenbrand was not acting under the color of law, then the tapes were obtained contrary to Wis. Stat. § 968.31(2)(c). Under that provision, consent is insufficient if the communication is intercepted to commit an "injurious act." According to Maloney, Hellenbrand was taping their conversations to injure him.

¶ 34. Again, we need not determine whether Hellenbrand was operating under color of law to resolve Maloney's claim of ineffective assistance of counsel. In either event, trial counsel would have had no basis for objecting to the admissibility of the videotape evidence under WESCL. If, as Maloney initially argued, Hellenbrand was acting under color of law, the videotapes were admissible at trial under Wis. Stat. § 968.31(2)(b). This is because Hellenbrand was a party to the communication who had clearly given prior consent to the police interception of her encounter with Maloney in the Las Vegas hotel room.

¶ 35. If, as Maloney now suggests, Hellenbrand was not acting under color of law, the videotapes were still admissible at trial under Wis. Stat. § 968.31(2)(c) because she consented to their interception by police and did not do so for the purpose of committing an illegal act. Although Maloney contends that Hellenbrand's attempt to record incriminating statements was an "injurious act" warranting suppression, we are not persuaded.

613

¶ 36. Like the court of appeals, we know of no law "that suggests an individual, who volunteers to aid the authorities in a lawful albeit surreptitious investigation, commits an injury against the investigated party simply by participation." *Maloney,* 275 Wis. 2d 557, ¶ 16. Indeed, such a rule would make "sting" operations a thing of the past. Undercover informants must surely realize that evidence they receive may be potentially harmful to the target of the investigation, but this is not the type of "injurious" act contemplated by the statute.

■■■■■

¶ 37. Accordingly, we are satisfied that the videotapes were lawfully obtained in conformity with WESCL and were admissible at trial. Counsel does not render deficient performance for failing to bring a suppression motion that would have been denied. *See State v. Harvey,* 139 Wis. 2d 353, 380, 407 N.W.2d 235 (1987). We therefore conclude that Maloney has failed to carry the burden of demonstrating ineffective assistance of counsel for his second claim.[16]

## C.

¶ 38. Finally, Maloney asserts that his trial counsel was ineffective for impermissibly inviting the State's lead investigator to comment on Maloney's credibility. Such a strategy, Maloney contends, was violative of the rule that no witness may give an opinion regarding

---

[16] Even if there were some sort of a violation of WESCL, we note that Hellenbrand could still have taken the witness stand at trial and testified about her encounter with Maloney in Las Vegas. Only the videotapes of that encounter would be inadmissible. *State v. Smith,* 72 Wis. 2d 711, 714, 242 N.W.2d 184 (1976); *State v. Maloney,* 161 Wis. 2d 127, 129–32, 467 N.W.2d 215 (Ct. App. 1991).

whether another competent witness is telling the truth. *State v. Haseltine,* 120 Wis. 2d 92, 96 352 N.W.2d 673 (Ct. App. 1984).[17]

¶ 39. Agent Skorlinski was the lead investigator in the case at hand. At trial, he testified at length about the investigation and the steady compilation of evidence against Maloney. There was nothing in Agent Skorlinksi's background or character that would call into question his credibility.

¶ 40. Having no independent basis to attack Agent Skorlinski's credibility, Maloney's trial counsel turned to the investigation itself. In a lengthy cross-examination spanning approximately 140 pages of transcript, counsel repeatedly brought out the fact that Agent Skorlinski did not believe Maloney. At one point, counsel asked, "[Y]ou had to say [at some point] maybe he didn't do it." Agent Skorlinksi replied, "I did not believe [Maloney's] denials." Agent Skorlinski further testified that he believed Maloney lied to Hellenbrand about a number of things on the Las Vegas videotapes.

¶ 41. At the *Machner* hearing, Maloney's trial counsel explained that his strategy had been to criticize the investigative techniques used in this case. Specifically, he sought to demonstrate that Agent Skorlinski had focused on his client so quickly that he failed to

---

[17] In *State v. Haseltine,* 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), the defendant was charged with sexual contact with his daughter. At trial, the daughter's psychiatrist testified that there "was no doubt whatsoever" that the daughter was an incest victim. *Id.* at 95–96. The court of appeals determined that this statement invaded the province of the jury, as it was tantamount to saying that the daughter was telling the truth. *Id.* at 96. Accordingly, the court of appeals held that no witness, expert or otherwise, should be permitted to give an opinion that another competent witness is telling the truth. *Id.*

consider other possible suspects. Counsel felt that his line of questioning, in which Agent Skorlinski indicated his belief that Maloney was a liar, would reveal this fixation.

¶ 42. The circuit court found trial counsel's strategy to be a commonly used tactic, particularly for Maloney's theory of defense. It observed:

> Attorney Boyle was attempting to portray the investigative team as overly zealous and closed minded . . . [T]hey focused on his client as the prime suspect and did not adequately consider other suspects. It is a common and widely accepted defense tactic to criticize the investigation, while not risking alienation of the jury by making the attack personal.
>
> . . . [Maloney's] theory of defense was that someone else committed the murder, and that law enforcement unreasonably focused on the defendant as the sole suspect. Part and parcel of that defense would be an attempt to establish that the lead investigator [Skorlinski] was closed-minded by showing that he unreasonably refused to believe the defendant's version of events in spite of evidence supporting that version.

¶ 43. When reviewing trial counsel's cross-examination of Agent Skorlinski, we are mindful that, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. Accordingly, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

¶ 44. Again, we conclude that Maloney has failed to show that his trial counsel's performance was deficient. Here, the purpose and effect of the cross-examination was not to impermissibly comment on the credibility of Maloney. Rather, it was to impeach Agent Skorlinksi by portraying him as a good but closed-minded investigator who failed to consider other suspects. As such, the questioning was not violative of the *Haseltine* rule. *State v. Jackson,* 187 Wis. 2d 431, 437–38, 523 N.W.2d 126 (Ct. App. 1994). *See also State v. Johnson,* 2004 WI 94, ¶¶ 2, 19–24, 26, 273 Wis. 2d 626, 681 N.W.2d 901. The fact that the strategy ultimately proved unsuccessful does not make it any less reasonable for purposes of evaluating Maloney's claim.

IV

¶ 45. In sum, Maloney claims ineffective assistance of trial counsel. He asserts three areas of deficient performance: (1) failing to challenge the admissibility of videotape evidence based on an alleged violation of SCR 20:4.2 by the special prosecutor; (2) failing to challenge the admissibility of videotape evidence under WESCL; and (3) impermissibly inviting the State's lead investigator to comment on Maloney's credibility. Because he has failed to demonstrate deficient performance, we ultimately conclude that Maloney has not shown ineffective assistance of trial counsel.

¶ 46. However, we do not affirm the decision of the court of appeals at this time. Rather, we retain jurisdiction and ask the parties to file additional briefs on the following two issues:

(1) Whether this court has authority to remand to

the circuit court for a motion for postconviction relief based upon the interest of justice.

(2) If so, whether this court should act upon that authority and remand as described above.

*By the Court.*—Jurisdiction is retained until further order of the court.