PER CURIAM.
¶1 Raymond K. Thompson appeals a judgment convicting him of three counts of first-degree sexual assault of a child, and an order denying his postconviction motions seeking a new trial due to the ineffective assistance of trial counsel and in the interest of justice.[1] For the reasons that follow, we affirm.
BACKGROUND
¶2 The female child victim in this case was born in December 2001. Thompson, the victim's father, was in a long-term relationship with the victim's mother for many years, and they lived together as a family. In 2011, the victim reported that Thompson had sexual contact with her on several occasions starting when she was about five years old. Thompson was charged with one act of sexual assault occurring when the family lived together in Armenia, Wisconsin. The other charged assaults occurred later, after the family moved to Necedah. The most recent charge alleged an assault during the spring of 2011, when the victim was ten years old.
¶3 The victim was eleven years old at the time of trial. We relate the following trial testimony pertinent to the claims on appeal.
¶4 The victim testified that when she was younger and they were living in Necedah, Thompson would come into her bedroom "in underwear or naked and pull down my shorts and underwear or pajamas, and he would take his private and rub it against my vagina and butt." The State asked the victim the following:
Q. Do you remember this happening anywhere other than in that room?
A. In a blue truck when I was young.
Q. How do you know you were young?
A. Because I remember him taking off my Pull-Up.
Q. Can you tell me how that happened?
A. Well, when we would be driving he would take off my Pull-Up and he would set me on his lap while he had his pants and underwear down.
...
A. He would-when I was younger, like, I don't remember if I wore pants, I don't remember that much, but he would take my Pull-Up and pull it down or take it off, and he would set me on his lap while his pants or jeans were-and his underwear were pulled down, and he would set me on his lap and he would push the gas and I would steer.
She recalled this happening two times in the truck.
¶5 The defense challenged the victim's credibility regarding her testimony that she was still wearing Pull-Ups at age five.
Q. Do you remember saying at the time of your interview that the first time that your dad touched you was when your bedroom was where [your brother's] room is?
A. Yes.
Q. And is that accurate?
A. Well, I don't think that's so accurate. Like, I remember, like I told you when the truck was coming, and we were going to our first house that we lived in, that was the only time I remember. I don't remember exactly the first time.
Q. Okay. So the earliest time that you remember now is when you were in the truck; is that true?
A. Yes.
Q. And that was when you remember your dad pulling your Pull-Up down?
A. Yes.
Q. And you think you were 5 then?
A. Yes.
Q. So you weren't potty trained until sometime, 5 or later?
A. I'm not sure when I was potty trained.
Q. Okay. Because once you were potty trained you weren't wearing Pull-Ups anymore; is that true?
A. Yes.
¶6 Detective Timothy Andres, who interviewed Thompson twice, testified that Thompson told him that he put the victim on his lap in the car when they lived in Armenia. According to Andres, Thompson "told me he had had [the victim] on his lap many times when they lived up in Armenia Township due to the rural roads and driving up around there, there wasn't that much traffic." The State asked Andres, "How old did [Thompson] say [the victim] was when he was driving around with her on his lap?" Andres replied, "Approximately 4 years of age. And it would have been sometime after 2003."
¶7 After the State rested, Thompson testified. Regarding the victim's claims of sexual abuse that occurred in the blue truck, Thompson stated:
Q. So the truck, you got at the end of 2003, the blue truck?
A. I'm not sure when exactly I got it because I did not register it immediately. I bought it through the shop I worked at and it wasn't functioning.
Thompson denied having sexually abused the victim. He testified that the victim's mother threatened that if he left her, she would tell people he was "sleeping with" the victim.
¶8 The jury convicted Thompson of all charges. On each count, the circuit court imposed concurrent thirty-year sentences, with twenty years of initial confinement followed by ten years of extended supervision.
¶9 Thompson filed postconviction motions seeking a new trial due to the ineffective assistance of trial counsel and in the interest of justice. He alleged that trial counsel was ineffective for failing to present the following to the jury: (1) evidence that the blue truck was not acquired by the defendant until March 2006, and (2) the testimony of two witnesses, Anthony Hoffman and Sally Denter.
¶10 The circuit court held an evidentiary Machner[2] hearing at which trial counsel, Thompson, Denter, and Hoffman testified. The court determined that trial counsel did not perform deficiently and denied the motions in a written decision. Thompson appeals.
DISCUSSION
A. Legal Standards
¶11 To prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's actions or inaction constituted deficient performance which caused prejudice. Strickland v. Washington , 466 U.S. 668, 687 (1984) ; State v. Love , 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional deficiency, the defendant must establish that counsel's conduct [fell] below an objective standard of reasonableness." Love , 284 Wis. 2d 111, ¶30. A defendant must show specific acts or omissions that were "outside the wide range of professionally competent assistance." Strickland , 466 U.S. at 690. Judicial review of an attorney's performance is "highly deferential" and the reasonableness of an attorney's acts must be viewed from counsel's contemporary perspective to eliminate the distortion of hindsight. See State v. Maloney , 2005 WI 74, ¶25, 281 Wis. 2d 595, 698 N.W.2d 583. To prove constitutional prejudice, the defendant must show that but for counsel's unprofessional errors a reasonable probability exists that the result of the proceeding would have been different. Strickland , 466 U.S. at 694 ; Love , 284 Wis. 2d 111, ¶30.
¶12 Whether counsel's actions were deficient or prejudicial is a mixed question of law and fact. Strickland , 466 U.S. at 698. The circuit court's findings of fact will not be reversed unless clearly erroneous. State v. Pitsch , 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). However, whether counsel's conduct violated the defendant's right to effective assistance of counsel is a legal determination, which this court decides de novo. Id. We need not address both prongs of the test if the defendant fails to make a sufficient showing on either one. Strickland , 466 U.S. at 697. We decide this appeal on the deficiency prong.
B. Evidence Concerning Registration of the Blue Truck
¶13 Thompson's postconviction motions claimed that trial counsel was ineffective for failing to present evidence that Thompson did not own the blue truck referred to in the victim's testimony until March 2006. In support, Thompson introduced a record from the Division of Motor Vehicles (DMV) showing that the blue truck was registered in March 2006. His theory was that the March 2006 registration "would have cast doubt on [the victim's] allegations that the assaults happened in this truck when she was young and wearing Pull-Ups."
¶14 The postconviction court determined that the victim's "substantially consistent" trial testimony-that she was unsure when she was potty-trained but was around five years old and wearing Pull-Ups when the assaults in the truck occurred-was not undermined by the DMV record. "She turned five on December 20, 2006-months after the truck was registered. Under those circumstances, it is unclear that the DMV records would have been helpful, let alone that the failure to produce them was deficient or resulted in prejudice." In rejecting Thompson's ineffective assistance claim, the postconviction court also considered that, during trial, defense counsel "challenged the victim's credibility regarding testimony that she was still wearing [Pull-Ups] at age five when the alleged assaults in the blue truck occurred."
¶15 Though Thompson testified that he raised the timing of the truck purchase with counsel during trial, and despite trial counsel's testimony that she "may have been" able to get the DMV record during trial, the postconviction court was not persuaded that counsel performed deficiently. Here, the court cited to Thompson's testimony at trial that he was unsure when exactly he obtained the truck and that he did not register it immediately. The postconviction court found: "His failure to clearly deny ... [during] trial that he bought the truck in 2003 is hard to square with his testimony at the [postconviction] evidentiary hearing that the timing of the truck purchase was raised to counsel during the trial or with the suggestion that there was time during the trial to produce the registration information."[3]
¶16 We conclude that Thompson has failed to show that trial counsel's performance was objectively unreasonable. That the blue truck was not registered until March 2006 does not undermine the victim's testimony that she was assaulted when she was five years old given that her fifth birthday occurred months after the registration. Additionally, the credibility of the victim on the topics of her age and the likelihood that she would have worn Pull-Ups was vetted by counsel at trial. Further, the postconviction court's implicit finding that Thompson did not raise the truck-timing issue with trial counsel in time for her to obtain the DMV record for use at trial is not clearly erroneous.
¶17 Thompson apparently argues that the March 2006 truck registration undermines the victim's credibility because the charging period alleges that any truck assault occurred "between the end of 2003 and August 2005." We are not persuaded.
¶18 First, the victim did not designate the charging period. She was a young child at the time of the assaults and readily acknowledged at trial that it was hard to remember dates and times. As the postconviction court pointed out, had Thompson introduced the DMV record at trial, the State could have asked the court to amend the information to conform to the evidence and the court would likely have granted this motion. Second, the DMV record does not disprove that Thompson assaulted the victim in the blue truck before it was registered. At trial, Thompson acknowledged that he was uncertain as to when he first acquired the truck because he did not register it "immediately," and the jury heard evidence through Detective Andres that Thompson told him that he rode with the victim in his lap "many times when they lived up in Armenia Township," when the victim was "[a]pproximately four years of age."
¶19 In sum, we conclude that Thompson fails to show that trial counsel was deficient as to evidence concerning registration of the blue truck.
C. Testimony of Anthony Hoffman
¶20 At the Machner hearing, Anthony Hoffman testified that: (1) the victim told him that Thompson never touched her inappropriately; (2) he heard the victim's mother ask her own sister to have the sister's daughter tell police that Thompson had touched her inappropriately; and (3) the victim's mother asked Hoffman to lie and say that he saw Thompson touch the victim inappropriately. Hoffman also testified that he had a conversation with trial counsel, but never told her about the victim's mother's efforts to get him and the sister's daughter to lie. Hoffman testified that he tried calling trial counsel "multiple times" to tell her about the victim's mother's conversation, but that trial counsel did not respond to his voicemails.
¶21 Trial counsel testified that she specifically asked Hoffman whether he had any evidence regarding the victim's mother trying to coerce the victim's testimony, and that Hoffman informed her that he had no direct evidence. Trial counsel testified that Hoffman was focused on promoting his own theory of defense, which was that if anyone had gotten up during the night at the victim's residence, Hoffman-who at one time lived with Thompson and the victim's mother in Necedah-would have heard it. Trial counsel declined to call Hoffman as a trial witness, describing his theory as a "red herring."
¶22 The postconviction court found trial counsel's testimony about her conversations with Hoffman to be credible, and determined that her decision not to call Hoffman as a witness was reasonable. The court explained:
Counsel had detailed notes regarding her conversations with Mr. Hoffman and was able to articulate at the hearing exactly what he told her and why he was not called. Mr. Hoffman, on the other hand, offered incredible testimony at the evidentiary hearing such as: He didn't tell counsel about the lie request from [the victim's mother] because he thought he would talk to her again. He had the ability to tell law enforcement about the lie request, but didn't know how to make a report. He never thought about writing to trial counsel to tell her about the lie. He was present for the trial, but apparently never approached defense counsel during the trial about the lie request.
¶23 The postconviction court's factual findings are well articulated and supported, and are not clearly erroneous. Based on the information actually provided by Hoffman, trial counsel made a reasonable strategic decision not to call him as a defense witness.
D. Testimony of Sally Denter
¶24 Sally Denter, the mother of the victim's mother's boyfriend, testified that she heard the victim's mother "coaching" the victim's testimony before trial. Denter defined coaching as "telling them what the facts are." When asked, Denter could not recall any specifics of the coaching. Denter also testified that she never told law enforcement or trial counsel about the coaching, even though she knew that coaching was wrong. At the Machner hearing, trial counsel testified that she had never heard of Denter.
¶25 Thompson argues that trial counsel performed deficiently by failing to call Denter as a witness because it "would have corroborated" Hoffman's testimony and "would have been relevant to the credibility of [the victim]." This claim is a nonstarter because Denter never contacted trial counsel or anyone else before or during trial. We agree with the postconviction court that trial counsel cannot be faulted for failing to call a witness she was not aware of and had no reason to know had potential evidence.
E. Cumulative Errors
¶26 We reject Thompson's claim that he is entitled to a new trial based on the cumulative effect of trial counsel's errors. Because Thompson has not established that trial counsel's performance was deficient in any respect, he necessarily cannot establish that counsel's deficiencies, when viewed cumulatively, were prejudicial. See State v. Thiel , 2003 WI 111, ¶61, 264 Wis. 2d 571, 665 N.W.2d 305 (though cumulative effect of trial counsel's errors may be prejudicial, "each act or omission must fall below an objective standard of reasonableness [ ] in order to be included in the calculus for prejudice").
F. New Trial in the Interest of Justice
¶27 Finally, Thompson seeks a new trial under WIS. STAT. § 752.35 on the ground that the real controversy was not fully tried. Thompson must convince us "that the jury was precluded from considering 'important testimony that bore on an important issue' or that certain evidence which was improperly received 'clouded a crucial issue' in the case." State v. Darcy N.K. , 218 Wis. 2d 640, 667, 581 N.W.2d 567 (Ct. App. 1998) (quoting State v. Hicks , 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996) ). An appellate court will exercise its discretion to grant a new trial in the interest of justice "only in exceptional cases." State v. Cuyler , 110 Wis. 2d 133, 141, 327 N.W.2d 662 (1983).
¶28 We have already concluded that trial counsel did not perform deficiently and the circuit court did not err. "Adding them together adds nothing. Zero plus zero equals zero." Mentek v. State , 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976). Accordingly, we determine that such exceptional relief is unwarranted and decline to grant Thompson a new trial.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The Honorable John P. Roemer presided at Thompson's jury trial and sentencing hearing and entered the judgment of conviction. The Honorable Daniel G. Wood entered the order denying Thompson's postconviction motion.
Thompson was originally convicted of a fourth count, namely, repeated sexual assault of the same child "between August 2005 to spring 2011." On the motion of prior postconviction counsel, the circuit court vacated and dismissed that count on the ground that the other convictions occurred during the same charging period contrary to Wis. Stat. § 948.025(3) (2017-18). See also State v. Cooper , 2003 WI App 227, ¶15, 267 Wis. 2d 886, 672 N.W.2d 118 (the remedy where a defendant is convicted both of a repeated-acts assault and an individual assault of the same victim falling within the same time period is to dismiss the repeated-acts assault).
All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

State v. Machner , 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (where a defendant claims he or she received the ineffective assistance of trial counsel, a postconviction hearing "is a prerequisite ... on appeal to preserve the testimony of trial counsel").

The postconviction court found that Thompson's Machner hearing testimony was inconsistent with his trial testimony. Here, the postconviction court was referring to Thompson's Machner hearing testimony that he purchased the truck "right around March of 2006" and said he did not have the vehicle for any length of time before he registered it. On appeal, Thompson assigns this finding great import and argues that it is clearly erroneous, asserting that at the Machner hearing, Thompson made "no statement regarding how long he had the truck before he registered it." He faults the postconviction court for considering any such statement in determining his credibility. Thompson is wrong. At the Machner hearing, Thompson agreed that he "didn't have that vehicle for any length of time before [he] registered it." Regardless, Thompson overstates the significance of this finding to the postconviction court's overall decision.