COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1597-CR**

Cir. Ct. No. **2016CF3185**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LARRY REED, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. KREMERS and MARY M. KUHNMUENCH, Judges. *Judgment modified and, as modified, affirmed; order affirmed.*

Before Brash, P.J., Kessler and Brennan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Larry Reed, Jr., appeals from a judgment, entered upon a jury's verdicts, convicting him on one count of arson and one count of first-degree recklessly endangering safety.  Reed also appeals from an order denying his postconviction motion without a hearing.  Reed contends that trial counsel was ineffective in three ways.  We conclude Reed has failed to sufficiently demonstrate ineffective assistance, so we affirm the order.  We note two minor scrivener's errors in the judgment, however, so we order those corrected, but, upon that modification, the judgment is also affirmed.

## BACKGROUND

¶2     On July 10, 2016, police were dispatched to a house fire in Milwaukee.  Firefighters were able to successfully extinguish a fire in the upper unit of a duplex.  According to a statement given to police by M.W., she had gotten into an argument with her boyfriend, Reed, who made threats against her.  He piled clothes onto their bed, doused the clothes with lighter fluid, lit a roll of toilet paper on fire using the stove, and tossed the roll onto the bed, igniting the clothes while pushing M.W. down.  Reed continued to add lighter fluid to the bed and to the floor.  M.W. was able to get out of the house.  She believed that Reed left the scene in her car.

¶3     Reed was charged with one count of arson of a building as a domestic abuse repeater and one count of first-degree recklessly endangering safety as a domestic abuse repeater with domestic violence assessments.  During trial, the State dismissed the penalty enhancers.  Reed did not testify.  The theory of defense was that Reed did not start the fire.  The jury convicted Reed on both counts.  The trial court sentenced him to eighteen years' initial confinement and

ten years' extended supervision for arson, plus a concurrent six years' initial confinement and five years' extended supervision for endangering safety.[1]

¶4      Reed filed a postconviction motion in which he alleged that trial counsel had been ineffective by:  (1) failing to call M.W.'s mother, K.S., to testify; (2) failing to attack M.W.'s credibility through inconsistencies in her statements; and (3) failing to stress the inconsistencies in the testimony of J.W., M.W.'s eleven-year-old son.  Reed also asserted that the combined effect of these errors prejudiced him.  The circuit court denied the motion without a hearing, noting "that the claimed inconsistences are entirely minimal and wholly insignificant in the big scheme of what occurred."  Reed appeals.

## DISCUSSION

¶5      "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief."  ***State v. Allen***, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the motion alleges such facts is a question of law.  *See id.*, ¶9.  If the motion raises sufficient material facts, the circuit court must hold a hearing.  *See id.*  If the motion does not raise sufficient material facts, if the motion presents only conclusory allegations, or if the record conclusively shows the defendant is not entitled to relief, then the decision to grant or deny a hearing is left to the circuit court's discretion.  *See id.*

---

[1] The Honorable Jeffrey A. Kremers presided at trial and imposed sentence.  We refer to him as the trial court.  The Honorable Mary M. Kuhnmuench reviewed and denied the postconviction motion.  We refer to her as the circuit court.

¶6    The circuit court has the discretion to deny "even a properly pled motion … without holding an evidentiary hearing if the record conclusively demonstrates that the defendant is not entitled to relief." *See **State v. Sulla***, 2016 WI 46, ¶30, 369 Wis. 2d 225, 880 N.W.2d 659. "We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard." *Id.*, ¶23 (citation omitted).

¶7    The requirements for showing ineffective assistance of counsel are well established. A defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See **State v. Balliette***, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. "Whether counsel was ineffective is a mixed question of fact and law." *Id.*, ¶19. The defendant must show both elements, and we need not address both if the defendant fails to make a sufficient showing on one of them. *See **State v. Maloney***, 2005 WI 74, ¶14, 281 Wis. 2d 595, 698 N.W.2d 583.

*I. The Failure to Call K.S. as a Witness*

¶8    "Failure to call a potential witness may constitute deficient performance." ***State v. Jenkins***, 2014 WI 59, ¶41, 355 Wis. 2d 180, 848 N.W.2d 786. Counsel's performance is deficient if it "fell below the objective standard of reasonably effective assistance." *See id.*, ¶40. If deficient performance is established, the defendant must also demonstrate prejudice—that is, "the defendant must show that, absent defense trial counsel's errors, there was a reasonable probability of a different result." *See id.*, ¶49.

¶9    Reed first contends that counsel should have called M.W.'s mother, K.S., to testify. He contends that "[t]heir versions of events differed significantly, and had K.S. testified, it would have cast doubt on M.W.'s credibility." Reed

4

asserts trial counsel should have known this from the police reports. According to Reed:

> M.W. and K.S. have remarkably different versions of what happened that day. According to M.W.'s version to police, she was the only person in the apartment with Mr. Reed, while K.S. says she was there the whole time. M.W. did testify that "they" came upstairs to see what was going on after she called out that Mr. Reed had set the house on fire, but that does not appear in police reports. She later testified that "they" were there when the place was set on fire. Therefore, her story changed several times, while K.S. stated that she saw the fire being set. In M.W.'s version, he sprayed lighter fluid on the bed before lighting the toilet paper roll on fire. In K.S.'s version, he sprayed lighter fluid on the bed after lighting the toilet paper roll on fire. M.W. only saw Mr. Reed put lighter fluid in the bedroom, while K.S. argues that he also put it in the dining room. M.W. states that Mr. Reed slapped her, while K.S. states that she heard a fist strike multiple times.

¶10 We agree with the circuit court that any inconsistences between M.W.'s and K.S.'s reports are insignificant. M.W. told police that everyone—including her mother and son—was at home but on the porch during the incident. K.S. told police she was on the porch and heard M.W. and Reed fighting before M.W. yelled for her to call police. K.S.'s statement did not say she saw the fire being set but, rather, says that she ran upstairs and saw the bedroom on fire. Both M.W. and K.S. reported to police that they saw Reed light a roll of toilet paper. While K.S. only saw Reed add lighter fluid after igniting the toilet paper, M.W. told police that Reed squirted the lighter fluid both before and after igniting the roll. Both women reported an assault on M.W., though K.S. only heard it, and both women noted that Reed fled the home.

¶11 "A failure to call a key witness … does not always necessarily constitute deficient performance." *Jenkins*, 355 Wis. 2d 180, ¶45. While Reed contends that, had the jury heard K.S.'s testimony, it would have found him not

5

guilty "due to the inconsistent version of events between witnesses as they tried to come up with a cover story so M.W. wouldn't get in trouble for starting the fire," K.S.'s potential testimony is largely corroborative of M.W.'s version of events. Thus, we are not persuaded that it was deficient of counsel to call a second witness who would have largely supported the first witness on key elements and, even if it was deficient, we further discern no prejudice from the failure to call K.S.[2]

*II. The Failure to Stress Inconsistencies in M.W.'s Testimony*

¶12    Reed next complains that trial counsel should have better attacked M.W.'s credibility through her inconsistent statements:

> M.W.'s version of events changed from the police reports to her testimony. She told police that her family had gone outside after the argument and never mentioned any of them being in the apartment after that point; she never said they were in the apartment while the fire was being lit or after it had already been set on fire. She then testified that "they" came upstairs to see what was going on after she called out that Mr. Reed had set the house on fire. On cross-examination, she testified that "my mom and my son, they seen him start the fire; they seen him continually try to keep it going, yes, they did see it. They came in the room, he pushed my mom, pushed my son." On redirect, she testified that it was just her and Mr. Reed when the fire started and that her mother and son came back upstairs after the fire started.
>
> Further, she told police that Mr. Reed slapped her chin. On redirect, she testified that her mom carried her outside; "I don't know if I passed out or Mr. Reed kicked me or something like that, I'm not sure." She also testified that Mr. Reed pushed her mom and son, which she never mentioned to police.

---

[2] Moreover, there is no evidence to suggest that M.W. started the fire, so it is purely speculative to assert the jury would have acquitted Reed based on minor discrepancies between M.W.'s and K.S.'s statements.

¶13    As the circuit court stated, M.W.'s testimony was "fairly consistent with what she told police." She told police, and also testified, that she watched Reed start the fire, that he sprayed the clothes on the bed with lighter fluid, that he lit a roll of toilet paper on fire and tossed it on the bed, and that Reed fled the scene.[3] Those are the key questions that go to Reed's guilt on both the arson and the reckless endangerment charge, and M.W. was clear on those points. Like the circuit court, we discern no prejudice from trial counsel's failure to stress minor inconsistencies or omissions in the details M.W. provided about the whereabouts of the others and Reed's physical aggression towards M.W. and her family.

### III.  Failure to Stress "Inconsistencies" in J.W.'s Testimony

¶14    Reed also contends that trial counsel should have pointed out "inconsistences" in testimony from J.W., M.W.'s eleven-year-old son:

> [J.W.] testified that he saw Mr. Reed acting like he was peeing fluid on his mom's bed and trying to put some tissue on the bed. He also testified that Mr. Reed ripped his mother's shirt, pushed her on the floor, and started thumping her head on the floor; when he tried to stop Mr. Reed, Mr. Reed hit his head on the floor. He then testified that his grandma, K.S., tried to stop him and her hair got lit on fire. His grandma had to help [his] mom out of the house because she was knocked out.

> M.W. never testified that Mr. Reed ripped her shirt or started thumping her head on the floor. Nor is there any evidence in the police reports that M.W. had a torn shirt when the police arrived. There is also not any evidence that K.S.'s hair got lit on fire; had the trial attorney subpoenaed K.S. and called her as a witness, she would have testified to that fact because it is inconceivable that that would have happened and yet she didn't tell the police about it.

---

[3] Additionally, we note that though M.W. never told police that Reed pushed K.S. or J.W., K.S. did tell police that Reed pushed her.

Reed notes that "J.W.'s version of events was much more violent than M.W.'s version, but there is nothing to back up his version of events and he never told police any of it."

¶15 We note that J.W. apparently did not give any statement to police. It is not entirely evident whether the "inconsistencies" about which Reed complains are internal inconsistencies in J.W.'s testimony or inconsistencies with his mother's testimony. The State, for its part, suggests that Reed is arguing less about whether J.W.'s testimony contains inconsistencies and more about whether J.W.'s testimony is corroborated.

¶16 Regardless, J.W., like his mother, testified that Reed lit toilet paper on fire and sprayed lighter fluid in the flames.[4] M.W. had testified that Reed pushed and slapped her; this is consistent with J.W.'s testimony that Reed pushed M.W. M.W. also testified that she thought her mother carried her outside, which is not inconsistent with J.W.'s testimony that his grandmother had to help her out of the house. While Reed thinks defense counsel should have subpoenaed K.S. to testify whether her hair caught on fire, her potential testimony as noted herein would have largely corroborated J.W.'s testimony, even if it differed on this one detail. We are therefore unpersuaded that, had trial counsel pressed inconsistencies in J.W.'s testimony, the result of the trial would have been different.

---

[4] J.W.'s testimony that Reed was "acting like he was peeing" is consistent with K.S.'s statement to police that Reed was spraying the fluid "as if he was urinating."

*IV. Cumulative Error*

¶17    Finally, Reed argues that the cumulative effect of these failures prejudiced him.  *See* ***State v. Thiel***, 2003 WI 111, ¶¶4, 59, 264 Wis. 2d 571, 665 N.W.2d 305.  However, we have concluded that there were no individual harmful errors, so there can be no cumulative effect.  *See* ***Mentek v. State***, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976) ("Zero plus zero equals zero."); *see also* ***Thiel***, 264 Wis. 2d 571, ¶61 ("[I]n most cases, errors, even unreasonable errors, will not have a cumulative impact sufficient to undermine confidence in the outcome of the trial.").

**CONCLUSION**

¶18    In sum, Reed has not sufficiently alleged prejudice from any of counsel's supposed errors, and the record conclusively demonstrates he is not entitled to relief.  We therefore discern no erroneous exercise of discretion in the circuit court's decision to deny Reed's postconviction motion without a hearing.

¶19    There are, however, two scrivener's errors in the judgment of conviction.   The judgment lists the "939.621(1)(b)&(2) Domestic Abuse Repeater" penalty enhancer for both convictions.[5]  However, the record reflects that during the morning proceedings on August 1, 2017, the trial court asked the State, "[T]he penalty enhancers on Count 1 and 2 … what are you doing with those?"  The State replied, "I'm going to ask the Court to dismiss those."  Reed understandably did not object, so the trial court instructed, "All right, so take those

---

[5] Successful application of this penalty enhancer means that "the maximum term of imprisonment … may be increased by not more than 2 years if the person is a domestic abuse repeater." *See* WIS. STAT. § 939.621(2) (2015-16); WIS JI—CRIMINAL 984.

off the verdict forms and the instructions." It is unclear why appellate counsel, who noted that the penalty enhancers had been dismissed, did not take steps to ensure the judgment correctly reflects Reed's convictions. Therefore, we direct that, upon remittitur, the clerk of the circuit court shall amend the judgment of conviction to remove the domestic abuse repeater penalty enhancer from both counts. *See* ***State v. Prihoda***, 2000 WI 123, ¶¶26-27, 239 Wis. 2d 244, 618 N.W.2d 857. The judgment is otherwise affirmed.

*By the Court.*—Judgment modified and, as modified, affirmed; order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.