COURT OF APPEALS
DECISION
DATED AND FILED

January 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP892-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CF232**

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MICHAEL E. NELSON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dodge County: BRIAN A. PFITZINGER, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Michael Nelson was convicted in the Dodge County Circuit Court, following a jury trial, of four counts of misdemeanor bail

jumping and one count each of threatening a law enforcement officer, throwing or discharging bodily fluids at a public safety worker, resisting or obstructing an officer, and disorderly conduct. *See* WIS. STAT. §§ 946.49(1)(a), 940.203(2), 941.375(2), 946.41(1), and 947.01(1) (2015-16).[1]  Nelson filed a postconviction motion requesting relief because, according to Nelson, his trial counsel was constitutionally ineffective for the following two reasons. First, his trial counsel failed to seek dismissal of the discharging bodily fluids at a public safety worker charge, and a related bail jumping charge, on the ground that police "destroyed" or failed to preserve exculpatory evidence. Second, his trial counsel failed to argue that the statutory exclusion of felons from jury service violated Nelson's constitutional right to have potential jurors selected from a "fair cross section of the community" and, for that reason, he should be granted a new trial on all charges. The circuit court denied Nelson's postconviction motion without an evidentiary hearing on the first claim raised by Nelson and, following an evidentiary hearing, denied Nelson's motion on the second claim. We agree with the circuit court that Nelson has failed to establish that his trial counsel was constitutionally ineffective. We therefore affirm the judgment of conviction and the order of the circuit court.

## BACKGROUND

¶2      Following an incident that occurred in July 2018, Nelson was charged with:  four counts of misdemeanor bail jumping and one count each of disorderly conduct, threatening a law enforcement officer, discharging bodily

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

fluids at a public safety worker,[2] and obstructing a law enforcement officer. Those charges were tried before a jury. Nelson is black, and it is undisputed that the jury panel, which included twelve jurors and one alternate juror, did not include any black persons.

¶3    Testimony at trial adduced the following evidence.

¶4    Just before 9:00 p.m. on July 17, 2018, police responded to a 911 call reporting a domestic abuse incident at a residence in Beaver Dam. The caller was S.N.[3] S.N. told the responding officer, Jace Laning, that Nelson, who was not then at S.N.'s residence, had punched her. An order in a then-pending criminal case against Nelson prohibited Nelson from contacting S.N.[4]

¶5    Before Officer Laning's shift ended, he met with Officers K.H., Brad Konkel, and Derek Harmsen, who were working the next shift, and informed them of the domestic abuse report at S.N.'s residence and the no-contact order in place against Nelson. During that briefing, police dispatch received a call that Nelson may have returned to the vicinity of S.N.'s residence. Officers K.H., Konkel, and Harmsen each drove a squad car to S.N.'s residence.

¶6    Officer K.H. was the first officer to arrive at S.N.'s residence. When K.H. arrived at S.N.'s apartment building, he observed Nelson sitting outside the

---

[2] A "[p]ublic safety worker" is defined in these circumstances as a "peace officer." WIS. STAT. § 941.375(1)(b). It is undisputed that the officer who is the victim regarding that charge was a peace officer.

[3] Pursuant to WIS. STAT. RULE 809.86(4), we use initials in place of the victims' names.

[4] The four bail jumping charges are based on Nelson's violation of this order entered in that separate criminal case.

building talking on a phone. K.H. approached Nelson and asked about the incident that occurred earlier in the evening with S.N. When Officer Konkel arrived at the scene, he observed K.H. speaking with Nelson, and Nelson appeared "very calm." K.H. informed Nelson that he was placing Nelson under arrest and began to handcuff Nelson. Both K.H. and Konkel testified that, while K.H. was handcuffing Nelson, Nelson became verbally combative and physically made it difficult for K.H. to secure the handcuffs on Nelson.

¶7      After Nelson was hand-cuffed, K.H. walked Nelson to an open squad car door. During that time, Nelson continued, according to K.H., to "verbal[ly] assault" K.H., and Nelson next "cock[ed] his head back and sp[at] towards [K.H.'s] face." Some of Nelson's saliva hit K.H. on the left side of K.H.'s face. Konkel saw Nelson arch his back and then rapidly lean his upper torso forward. Konkel did not see Nelson spit at K.H., but heard what he believed to be a spitting sound. Immediately thereafter, Konkel observed "some sort of liquid on the left side of [K.H.'s] face."

¶8      At the time Officer K.H. responded to the report that Nelson had returned to the vicinity of S.N.'s residence, his squad car was equipped with two video cameras. One camera was mounted on the front windshield facing outward, and one camera was mounted above the front passenger seat headrest facing the rear of the vehicle. Together, the cameras recorded approximately forty-five minutes of footage from the beginning of K.H.'s encounter with Nelson until their arrival at the jail. That footage, which was played for the jury, captured Nelson making threats directed at K.H. and exhibiting disruptive behavior. Because of the positioning of the cameras, the footage from the cameras in K.H.'s squad car did not capture Nelson spitting at K.H.

4

¶9      Officer Konkel's squad car was equipped with a video camera, but that camera did not record any of the events surrounding Nelson's arrest. Konkel's squad car camera did not activate automatically. Konkel testified at trial that he did not manually activate the camera because the policy of the Beaver Dam Police Department is that officers are required to activate their camera systems "during a traffic contact or other very significant or major incident," and Konkel did not consider the incident with Nelson to be such a situation when he arrived at the scene. Konkel acknowledged that had he parked his squad car facing K.H.'s squad car, and had his squad car camera been recording, the camera "may have captured part of" the spitting incident.[5]

¶10     On Officer Harmsen's way to the scene, his speed exceeded forty miles per hour, at which point his squad car camera activated automatically. When Harmsen arrived at the scene, and before he left his squad car, he turned the camera off. According to Harmsen, he deactivated the camera because the situation at that point was "calm and collect[ed]," nothing "disruptive or emergent" was happening, and deactivating the camera in those circumstances is "common practice" for police officers in his department. On cross-examination, Harmsen testified that, based on where his squad car camera was situated inside his car, the camera "[p]ossibly … could have" captured the spitting incident if the camera had been activated.

---

[5] Nelson did not argue before the circuit court, and does not argue on appeal, that his trial counsel should have requested dismissal of charges based on Officer Konkel's decision not to activate his squad car camera when he arrived at the scene. Accordingly, we do not address whether Nelson's rights were violated on that basis.

¶11     The jury found Nelson guilty of all eight counts. Nelson alleged in a postconviction motion, and argues on appeal, that his trial counsel was constitutionally ineffective for two reasons:

1. Trial counsel failed to seek dismissal of the charge of discharge of bodily fluids at the police officer, and its related bail jumping charge, on the ground that Officer Harmsen "[k]nowingly and [w]illfully [d]estroyed" and failed to preserve exculpatory evidence; Officer Harmsen's deactivation of his squad car camera when he arrived at the scene constituted the purported destruction of evidence and failure to preserve.[6]

2. Trial counsel failed to argue that the statutory exclusion of felons from jury service violates Nelson's constitutional right to have potential jurors selected from a fair cross section of the community.

¶12     The circuit court denied Nelson's postconviction motion. The court rejected, without an evidentiary hearing, Nelson's first claim that his trial counsel was ineffective for not seeking the dismissal of the two charges against Nelson based on the alleged destruction of evidence by Officer Harmsen. The court held

---

[6] We pause to clarify the breadth of Nelson's first postconviction claim on appeal. Nelson argued in his postconviction motion that, as a sanction for the alleged "destruction" of evidence, the circuit court could dismiss "the entire case." The State asserts that Nelson's argument regarding a lack of video evidence of the spitting incident relates only to the discharge of bodily fluids charge and its companion bail jumping charge. Nelson does not refute this point in reply and, in reply, requests as relief on this claim only dismissal of the discharge of bodily fluids charge and the corresponding bail jumping charge. As a result, the point is conceded. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating a proposition asserted by a respondent on appeal and not disputed by the appellant's reply is taken as admitted).

an evidentiary hearing on Nelson's second claim regarding the potential jurors, after which the court rejected that claim. Nelson appeals.

¶13 We discuss additional material facts in our discussion below.

## DISCUSSION

¶14 There are two issues before us: (1) whether Nelson is entitled to an evidentiary hearing on his claim that his trial counsel was constitutionally ineffective for not seeking dismissal of the charge of discharging bodily fluids at a public safety worker, and its related bail jumping charge, on the ground that Nelson's rights were violated based on Officer Harmsen's purported destruction of, or failure to preserve, exculpatory evidence[7]; and (2) whether trial counsel's

---

[7] Nelson asks, in the alternative, that this court remand the first issue to the circuit court for a new trial based on his claim that counsel was ineffective for not requesting the sanction of dismissal of two charges. That is to say, Nelson asks this court to grant a new trial without an evidentiary hearing on the merits of the claim. Nelson asserts that "[w]hile an evidentiary hearing is often necessary to develop a defendant's [ineffective assistance of counsel] claim, the United States Supreme Court has never held a hearing to be a prerequisite" to a new trial based on an allegation of ineffective assistance of counsel. Nelson recognizes that, in *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), we held that an evidentiary hearing "is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel." *Id.* at 804. Nelson asks this court to disregard this binding precedent because, according to him, it "is directly contradicted by controlling United States Supreme Court" precedents. In support, Nelson points to the following statement in *Massaro v. United States*, 538 U.S. 500 (2003): "We do not hold that ineffective-assistance claims must be reserved for collateral review. There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal." *Id.* at 508.

Nelson's argument fails for at least the following two reasons. First, Nelson does not raise the issue of his trial counsel's ineffectiveness on direct review but, instead, on collateral review of the circuit court's order denying his motion for postconviction relief. Second, Nelson's argument disregards the continued affirmation of our Supreme Court that, when a defendant seeks postconviction relief based on the alleged ineffectiveness of trial counsel, an evidentiary hearing is required before a new trial may be granted on that basis. *See, e.g.*, *State v. Sholar*, 2018 WI 53, ¶50, 381 Wis. 2d 560, 912 N.W.2d 89 ("A[n] [evidentiary] hearing is a prerequisite for consideration of an ineffective assistance claim."). We are bound by that holding in *Sholar*. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997).

representation of Nelson was constitutionally ineffective for not challenging what Nelson describes as the "systematic exclusion" of blacks from Dodge County juries based on the "statutory exclusion of felons" from the list of persons eligible for jury service.

¶15 We begin our analysis by setting forth governing principles and our standard of review in cases in which a circuit court has denied a defendant's postconviction motion based on claims of ineffective assistance of counsel with or without an evidentiary hearing on the motion.

## I. Governing Principles and Standard of Review.

¶16 The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to effective assistance of counsel. *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. To establish ineffective assistance of counsel, a defendant must demonstrate: (1) that counsel's performance was deficient; and (2) that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must point to specific acts or omissions by his or her attorney that are "outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. We need not address both prongs of the of the *Strickland* test if the defendant does not make a sufficient showing on either one. *See id.* at 697.

¶17    A defendant is not entitled to an evidentiary hearing on his or her postconviction claim of ineffective assistance of counsel as a matter of right. *See Balliette*, 336 Wis. 2d 358, ¶18. To obtain an evidentiary hearing, the defendant must allege sufficient facts that, if true, would entitle him or her to relief. *Id.* The postconviction motion "must contain an historical basis setting forth material facts that allows the reviewing court to meaningfully assess the defendant's claims." *State v. Love*, 2005 WI 116, ¶27, 284 Wis. 2d 111, 700 N.W.2d 62. "[A] postconviction motion will be sufficient if it alleges … 'the five "w's" and one "h"; that is, who, what, where, when, why, and how.'" *Id.* (quoting *State v. Allen*, 2004 WI 106, ¶23, 274 Wis. 2d 568, 682 N.W.2d 433).

¶18    If the motion alleges sufficient facts, the circuit court must hold an evidentiary hearing. *Allen*, 274 Wis. 2d 568, ¶9. At the evidentiary hearing, the defendant has the burden to prove the allegations. *State v. Ziebart*, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369 (citing *State v. Sanchez*, 201 Wis. 2d 219, 232-36, 548 N.W.2d 69 (1996)). Whether the defendant has done so presents a mixed question of fact and law. *State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. We will accept the circuit court's factual findings following the postconviction evidentiary hearing "unless they are clearly erroneous." *Id.* "Findings of fact include 'the circumstances of the case and the counsel's conduct and strategy.'" *Id.* (quoted source omitted). However, we will independently review whether those facts entitle the defendant to relief. *Id.*

¶19    "[I]f the [postconviction] motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Allen*, 274 Wis. 2d 568, ¶9. Whether Nelson's postconviction motion alleges sufficient material facts that, if

9

true, would entitle him to an evidentiary hearing is a question of law that we review de novo. ***Id.***

¶20    Of importance to our analysis of Nelson's claims is that trial counsel is not ineffective for failing to argue a point of law that is "unclear" and "unsettled." ***State v. Maloney***, 2005 WI 74, ¶¶26, 28-30, 281 Wis. 2d 595, 698 N.W.2d 583.   Ineffective assistance of counsel claims "should be limited to situations where the law or duty is clear such that reasonable counsel should know enough to raise the issue." ***Id.***, ¶29 (quoted source omitted); *see* ***State v. Thayer***, 2001 WI App 51, ¶14, 241 Wis. 2d 417, 626 N.W.2d 811 (stating counsel is not required to argue a point of law that is unclear).   In addition, counsel is not ineffective for failing to make an argument that has no chance of success.  *See* ***State v. Toliver***, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (stating counsel is not ineffective for failing to make meritless arguments).

¶21    We next address Nelson's ineffective assistance of counsel claims in turn.

## II.  Trial Counsel's Failure to Request Dismissal of Two Charges.

¶22    Nelson argues that he alleged sufficient facts in his postconviction motion to entitle him to an evidentiary hearing on whether his trial counsel was ineffective for failing to seek dismissal of two charges against Nelson on the basis that Officer Harmsen "destroyed," or failed to preserve, exculpatory evidence.  As noted, the only evidence that was purportedly "destroyed" or not preserved relates to Officer Harmsen's decision to shut his squad car camera off when he arrived at the scene, which meant that his squad car camera was not recording.  Below, we set forth principles governing the destruction of evidence, or failure to preserve evidence, by law enforcement and then address whether the allegations set forth in

Nelson's postconviction motion are sufficient to entitle him to an evidentiary hearing on this claim.

### A. Governing Principles on Destruction of, or Failure to Preserve, Evidence.

¶23 The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires that criminal prosecutions conform to fundamental notions of fairness and that criminal defendants be given "a meaningful opportunity to present a complete defense." *State v. Weissinger*, 2014 WI App 73, ¶8, 355 Wis. 2d 546, 851 N.W.2d 780 (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)), *aff'd*, *State v. Luedtke*, 2015 WI 42, 362 Wis. 2d 1, 863 N.W.2d 592; *see also* U.S. CONST. amend. XIV, § 1. In *Trombetta*, the United States Supreme Court held that, in order to satisfy due process requirements, the prosecution must preserve exculpatory evidence that cannot be obtained by the defendant by other reasonably available means. *Trombetta*, 467 U.S. at 488-89; *see also State v. Munford*, 2010 WI App 168, ¶¶20-21, 330 Wis. 2d 575, 794 N.W.2d 264; *State v. Greenwold*, 181 Wis. 2d 881, 885, 512 N.W.2d 237 (Ct. App. 1994) (*Greenwold I*); *see generally Brady v. Maryland*, 373 U.S. 83, 87 (1963) (requiring the prosecution to disclose material exculpatory evidence to the defense). The Supreme Court later refined the *Trombetta* rule in *Arizona v. Youngblood*, 488 U.S. 51 (1988). *Weissinger*, 355 Wis. 2d 546, ¶10; *see Greenwold*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994) (*Greenwold II*).

¶24 A defendant's due process rights are violated when law enforcement fails to preserve exculpatory evidence that cannot be obtained by other reasonable means if either of the following prongs are shown: (1) the evidence not preserved is apparently exculpatory; or (2) law enforcement acted in bad faith by failing to preserve evidence that is potentially exculpatory. *Youngblood*, 488 U.S. at 57-58;

*see* **Greenwold II**, 189 Wis. 2d at 67. The apparent or potential nature of exculpatory evidence is gauged at the time the evidence is destroyed. *See* **Trombetta**, 467 U.S. at 489; **Weissinger**, 355 Wis. 2d 546, ¶15 n.6.

## B. Nelson's Allegations Are Not Sufficient to Entitle Him to an Evidentiary Hearing on His First Claim.

¶25 Nelson alleged in his postconviction motion, and argues on appeal, that Officer Harmsen "destr[oyed] … evidence," by shutting off his squad car camera.[8] Nelson also argues on appeal that he alleged sufficient facts in his motion to establish that Officer Harmsen failed to preserve evidence by not recording the police encounter with Nelson and this violated his due process rights under the second prong of **Youngblood**. *See* **Youngblood**, 488 U.S. at 57-58.

¶26 We reject Nelson's arguments.

---

[8] Nelson set forth the following pertinent allegations in his postconviction motion concerning the apparent exculpatory nature of the would-be video recording: "The angle of Officer Harmsen's squad car" was "such that video recorded by his dash camera would have shown the interactions on the passenger side of [K.H.'s] vehicle" where the spitting incident took place. The video recording from Officer Harmsen's squad car camera "would have shown Mr. Nelson did not spit on [K.H.]." The only fact in the record regarding those assertions in Nelson's postconviction motion is Officer Harmsen's testimony at trial that it is "[p]ossibl[e]" that the spitting incident would have been captured had his squad car camera been actively recording. Nelson does not state facts establishing where that camera was positioned and pointing. Arguably, Nelson's motion is insufficient because it does not allege facts to show that the camera in the Harmsen squad car, if operating, would have recorded the spitting incident. However, the State does not make that argument and, by contending that the Harmsen squad car camera would have recorded inculpatory evidence if operating, the State implicitly concedes that the camera was positioned such that it could have recorded the spitting incident. As a result, we decide this issue on other grounds.

### 1. No Evidence Was Destroyed and There Was No Failure to Preserve Evidence.

¶27    An explicit factual premise of Nelson's postconviction motion, and his argument on appeal, is that evidence was "destroyed" by Officer Harmsen. The State argues that no evidence was destroyed. The common definition of "destroy" in this factual context is "[t]o undo, break into useless pieces, or reduce into a useless form, consume, or dissolve (any material structure or object)." Oxford English Dictionary, https://www.oed.com/view/Entry/51103?rskey=gp9YFh&result=2#eid (last visited Jan. 21, 2020). Nelson gives us no reason to conclude that any evidence was "destroyed" by Officer Harmsen in light of the fact that no video from his squad car camera ever existed. Because an argument from trial counsel based on alleged destruction of evidence by Officer Harmsen would have failed, trial counsel's performance was not deficient. *See Toliver*, 187 Wis. 2d at 360.

¶28    In addition, using terminology from *Youngblood*, Nelson argues on appeal that there was a failure by police to "preserve" evidence because Officer Harmsen did not create a video of the spitting incident. *See generally Youngblood*, 488 U.S. at 57-58; *Greenwold II*, 189 Wis. 2d at 67. Nelson cites no authority for his counter-intuitive proposition that it is a failure to "preserve" evidence when an officer does not create a video recording of an encounter between police and a suspected criminal. In response to the State's argument that the State has no obligation to disclose what does not exist, Nelson concedes: "From a purely technical standpoint, there is merit to [the State's] argument." We reject Nelson's "technical" assertion about the State's argument because there is no valid basis for Nelson's contention that Officer Harmsen failed to preserve evidence. In other words, the State is correct in this context that the State has no obligation to create a video of the police encounter with Nelson. Moreover, the

13

cases relied on by Nelson regarding this argument all discuss evidence that exists or once existed. *See, e.g.*, **Luedtke**, 362 Wis. 2d 1, ¶46 ("Therefore, under longstanding Wisconsin precedent, it is clear that the routine destruction of a driver's blood or breath sample, without more, does not deprive a defendant of due process.").

¶29    Because, at the very least, Wisconsin law is unsettled and the duty is not clear that a law enforcement officer must, as Nelson contends, create a video recording of interactions of police with suspects, we conclude that Nelson's trial counsel's performance was not deficient in failing to make the arguments that Officer Harmsen destroyed or failed to preserve evidence. *See **Thayer***, 241 Wis. 2d 417, ¶14 (stating counsel is not required to argue a point of law that is unclear). That reason, alone, is sufficient to reject Nelson's request for an evidentiary hearing on this claim.

### 2.  Nelson's Argument Under *Youngblood* Fails.

¶30    Even if we would conclude that Officer Harmsen failed to preserve a video that never existed (and we do not come to that conclusion), the officer did not violate Nelson's constitutional rights under *Youngblood* because Nelson's postconviction motion does not establish that Officer Harmsen could have reasonably foreseen that any such recording would be exculpatory.

¶31    As discussed, Nelson relies on only the second prong of the *Youngblood* analysis; that is, a defendant's due process rights are violated if it can be shown that the officer was aware of the potentially exculpatory value of the evidence at the time he or she failed to preserve the evidence. *See **Youngblood***, 488 U.S. 57-58; ***Greenwold II***, 189 Wis. 2d at 67; ***Weissinger***, 355 Wis. 2d 546, ¶15 n.6.

¶32   Nelson's postconviction motion alleges only that Harmsen "knew Mr. Nelson would be arrested," that Nelson's arrest "would likely lead to litigation," and that a recording of Nelson's arrest by Harmsen's squad car camera would "likely [be] … useful."   However, Nelson does not allege any facts or meaningfully argue that, when Officer Harmsen deactivated his squad car camera, the exculpatory value of a video made by his squad car camera was known or could be known to Officer Harmsen.   *See, e.g.*, ***Munford***, 330 Wis. 2d 575, ¶22 (concluding that the value of exculpatory evidence was not apparent at the time the evidence was destroyed).   More specifically, Nelson does not identify facts that, if true, establish that Harmsen should have known that the calm conversation between Officer K.H. and Nelson happening when Officer Harmsen left his squad car would escalate such that Nelson would become verbally abusive to K.H., Nelson would be accused by K.H. of spitting on K.H., and his squad car camera would be in a position to record those events.   In short, Nelson's postconviction motion fails to set forth facts that establish that his due process rights were violated under the second prong of the ***Youngblood*** analysis.

¶33   In sum, we conclude that the circuit court did not err in denying the first claim in Nelson's postconviction motion without an evidentiary hearing.

### III.  Trial Counsel's Failure to Challenge the Statutory Exclusion of Felons From the Jury Pool.

¶34   Nelson requests a new trial on all counts arguing that his constitutional rights were violated because there was a systematic exclusion of the black population of Dodge County from the jury pool based on the statutory exclusion of felons from jury service.   *See* WIS. STAT. § 756.02 (providing that convicted felons are ineligible to serve on juries unless their civil liberties have

been restored). Nelson contends that his trial counsel was constitutionally ineffective for failing to raise this issue in the circuit court. We disagree and begin our discussion by setting forth governing principles.

### A. Governing Principles.

¶35 The Sixth and Fourteenth Amendments of the United States Constitution grant a defendant the right to a "jury selected from a fair cross section of the community." *Duren v. Missouri*, 439 U.S. 357, 359 (1979). "The point at which an accused is entitled to a fair cross-section of the community is when the names are put in the [computer] from which the panels are drawn[.]" *Lockhart v. McCree*, 476 U.S. 162, 174 (1986) (quoting *Pope v. United States*, 372 F.2d 710, 725 (8th Cir. 1967)).

¶36 We continue next with a discussion of pertinent facts.

### B. Pertinent Facts.

¶37 At the evidentiary hearing, the Dodge County Clerk of Courts, Lynn Hron, testified to the following.

¶38 Jury panels in Dodge County are randomly drawn from a list of potential jurors which is compiled annually by the Wisconsin Supreme Court Office of Court Operations using records from the Department of Transportation. That list, which is the jury pool for Dodge County for a given year, typically contains 4,000 names and is not determined based upon race. Potential jurors are given a qualification form which requires each potential juror to self-report their race. In 2019, 1.08% of the potential Dodge County jury pool self-reported that they are "African American."

¶39    The Dodge County Clerk of Courts is required, by statute, to strike from the list of prospective jurors the name of any person who is not eligible to serve as a juror. WIS. STAT. § 756.04(2)(a) and (b), (3m), 6(am), and (9a) and (c). Persons not eligible to serve as a juror include convicted felons. WIS. STAT. § 756.02.

¶40    At the time of Nelson's trial, potential jurors were selected for periods of service of one week. The requested number of persons (e.g., 50, 100, or 200) for a particular week was entered into a computer and the potential jurors were selected by a computer program without consideration of race. From those selected persons, a jury pool was created for particular trials. For a criminal case, typically all persons selected for jury service for a particular week were included in the jury pool for that case. But, if fewer potential jurors were required, the computer program generated a shorter, random list of persons previously selected for that week.

¶41    For Nelson's trial, forty-five to fifty jurors were selected for the jury pool using that procedure, of which forty-two reported for jury duty. Of those potential jurors, twenty-five were selected for voir dire and, from those persons, thirteen of the jurors (twelve jurors and one alternate) were selected to sit for Nelson's trial; none of those persons are black.

¶42    The parties agreed to the following facts at the evidentiary hearing: 3.4% of the entire adult population in Dodge County (70,453 persons), which includes the population of the four state prisons located in Dodge County, is black. Approximately 2,000 black persons residing in Dodge County are incarcerated in those prisons. As a result, 85% of the black population in Dodge County is statutorily ineligible to serve on a jury because of the exclusion of felons from jury

17

service. Based on these numbers and percentages, the circuit court found that, excluding black prisoners and other black residents who are ineligible for jury service, black adults who are eligible for jury service represent approximately 1.03% of the population in Dodge County.

## C. Analysis.

¶43    Nelson does not dispute that the Dodge County Clerk of Courts complied with State law when compiling the annual jury array and when summoning prospective jurors from the array for the jury pool for his trial. Nelson argues only that there was a systematic exclusion of blacks from Dodge County jury pools as a result of the statutory exclusion of felons from jury service, and this violates his constitutional right to a jury selected from a fair cross section of the community.

¶44    Nelson's argument fails out of the gate because he does not explain why Wisconsin's statutory exclusion of felons from jury service violates any of his constitutional rights. Indeed, he gives us no discussion of any factors or tests that may be applied to determine if that statutory exclusion is unconstitutional. Nelson cites no authority from any forum or jurisdiction that has concluded that a statutory exclusion of felons from a jury pool is unconstitutional.

¶45    As noted, trial counsel is not ineffective for failing to argue a point of law that is "unclear and unsettled." *Maloney*, 281 Wis. 2d 595, ¶¶26, 28-30. Ineffective assistance of counsel claims "should be limited to situations where the law or duty is clear." *Id.*, ¶29. Nelson's argument is without precedent or any enumerated basis. At the very least, the argument that Nelson claims that his trial counsel should have made in the circuit court is unclear and unsettled.

18

Accordingly, trial counsel's failure to make that argument is not deficient performance.

¶46 In addition, Nelson's trial counsel testified at the evidentiary hearing in the circuit court that he was aware that it was unlikely that there would be blacks on the jury panel. Rather than focusing on that fact, trial counsel focused on obtaining a fair and unbiased jury and did so only after discussing that approach with Nelson. The law strongly presumes that counsel exercised reasonable professional judgment and made sound strategic decisions. *Strickland*, 466 U.S. at 690; *State v. Balliette*, 2011 WI 79, ¶¶25, 27, 336 Wis. 2d 358, 805 N.W.2d 334. Nelson makes no discernible argument which establishes that trial counsel's decision to focus on obtaining a fair and unbiased jury, rather than challenging the constitutionality of the statutory exclusion of felons from jury service, was unreasonable and outside the reasonable exercise of trial counsel's discretion.

¶47 In sum, trial counsel's failure to raise an argument challenging Wisconsin's statutory exclusion of felons from jury pools did not constitute ineffective assistance of counsel.

## CONCLUSION

¶48 For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

19