STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael R. LUEDTKE, Defendant-Appellant.†

Court of Appeals

*No. 2013AP1737–CR. Submitted on briefs February 27, 2014.
—Decided June 11, 2014.*

2014 WI App 79

(Also reported in 851 N.W.2d 837.)

† Petition for Review granted October 15, 2014.

436

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christine A. Remington*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. NEUBAUER, P.J. Michael R. Luedtke appeals from a judgment convicting him of operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood and an order denying his postconviction motion requesting dismissal of the charge or a new trial. Luedtke argues that the operating a motor vehicle with a detectable amount of a restricted controlled substance in the blood statute, WIS. STAT. § 346.63(1)(am) (2011–12),[1] is unconstitutional because it creates a strict liability criminal offense. Luedtke also argues that he was denied due process when the state destroyed his blood sample before he could conduct independent tests on the sample. We reject Luedtke's arguments and affirm.

## FACTS

¶ 2. Luedtke was arrested for operating a motor vehicle with a restricted controlled substance in his blood after he was involved in a two-car accident on April 27, 2009. Luedtke was driving someone else's vehicle when he looked down at his cell phone. When he looked up, the car in front of him had stopped. Luedtke rear-ended the car. The police officer who arrived at the scene did not notice any signs of impairment while talking to Luedtke. However, a person who lived near the accident scene told officers that he had seen Luedtke take items from the vehicle and stuff those items down the sewer. An officer retrieved six syringes and a metal spoon wrapped in a shirt from the sewer drain. The first officer asked Luedtke if he could search the vehicle, and Luedtke consented to the search. The search revealed syringes under the passenger and driver seats, a brown prescription bottle containing a

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

white powder, and a metal spoon. The officer testified that he asked Luedtke when he had last injected drugs, and Luedtke "told [him] that he injected his morphine but didn't want to say anything else." The officer then had Luedtke do field sobriety tests, his performance on which led the officer to believe Luedtke was impaired to the extent he could not drive safely. Luedtke was advised that he was under arrest, handcuffed, and taken to the hospital for a blood draw. Luedtke was read the Informing the Accused form, which informed him that he could take an alternative test free of charge or have a test conducted by a qualified person at his own expense.

¶ 3. While at the hospital, Luedtke was assessed by a police officer trained as a drug recognition expert (DRE). The DRE administered tests to evaluate whether Luedtke was impaired, including a balance test, a walk-and-turn test, a one-leg stand, and a finger-to-nose test. Luedtke performed poorly on these tests. Additionally, the DRE noticed fresh puncture marks near Luedtke's right thumb. Based on his observations, the DRE concluded that Luedtke was under the influence of a central nervous system narcotic analgesic, such as the morphine/opiate category of drugs. The DRE concluded that Luedtke was impaired.

¶ 4. The laboratory report on Luedtke's blood tested positive for diazepam (Valium), methadone, venlafaxine (Effexor), cocaine, and benzoylecgonine. Luedtke was charged by criminal complaint filed on December 18, 2009, with operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood and operating a motor vehicle while under the influence of an intoxicant. Luedtke's blood sample was discarded, per state laboratory protocol, on February 4, 2010. On December 28, 2010, the defense moved

to suppress the blood test results, arguing that the destruction of the blood sample before Luedtke was able to test it violated his constitutional rights. The trial court denied the motion, and the case proceeded to trial. The jury found Luedtke guilty of operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood but acquitted him of operating a motor vehicle while under the influence of a restricted controlled substance.

## DISCUSSION

¶ 5. Luedtke makes two challenges to his conviction, both on due process grounds. First, he contends that the statute prohibiting operating a motor vehicle with a detectable amount of a restricted controlled substance in the blood violates the Due Process Clauses of the United States and Wisconsin Constitutions because, as a strict liability statute, it does not require knowledge of the wrong committed. Second, Luedtke argues that the destruction of his blood sample prior to independent testing violated his right to due process. Finally, Luedtke argues that he received ineffective assistance of counsel due to his lawyer's failure to bring up these issues, or, in the alternative, that he is entitled to a new trial in the interest of justice.

¶ 6. The State responds that the statute is constitutional. The State reasons that the legislature permissibly created a strict liability crime to rationally address the severe societal problem of drugged driving. The trial court properly denied Luedtke's motion to suppress, contends the State, because Luedtke did not show that the blood sample was apparently exculpatory material evidence or that the State acted in bad faith in destroying the sample. Furthermore, argues the State, Luedtke's due process rights were protected by his

ability to have an independent test conducted at the time the test was taken and to challenge the results of the blood test. Finally, the State responds to Luedtke's ineffective assistance and new trial argument by indicating that there was no error on the merits.

A. *The Operating a Motor Vehicle with a Restricted Controlled Substance in the Blood Statute Is Constitutional.*

1. Standard of Review

¶ 7. Whether a statute is unconstitutional is a question this court reviews de novo. *State v. Neumann*, 2013 WI 58, ¶ 32, 348 Wis. 2d 455, 832 N.W.2d 560. The person challenging the statute must show beyond a reasonable doubt that it is unconstitutional. *State v. Baron*, 2009 WI 58, ¶ 10, 318 Wis. 2d 60, 769 N.W.2d 34.

2. The Legislature Intended Operating a Motor Vehicle with a Restricted Controlled Substance in the Blood to Be a Strict Liability Law.

¶ 8. Usually, criminal statutes require scienter. *State v. Weidner*, 2000 WI 52, ¶ 11, 235 Wis. 2d 306, 611 N.W.2d 684. However, strict liability criminal statutes are not unknown. *State v. Jadowski*, 2004 WI 68, ¶ 44, 272 Wis. 2d 418, 680 N.W.2d 810 (upholding strict liability statute for sexual assault of a person under sixteen). There are several factors a court can look to when deciding if the legislature meant to impose strict liability, including (1) the language of the statute, (2) legislative history, (3) related statutes, (4) law en-

forcement practicality, (5) protection of the public from harm, and (6) severity of the punishment. *Id.*, ¶¶ 21–30.

### a. Language of the Statute

¶ 9. WISCONSIN STAT. § 346.63(1)(am) prohibits driving or operating a motor vehicle while "[t]he person has a detectable amount of a restricted controlled substance in his or her blood." On its face, the statute does not require intent.

### b. Legislative History

¶ 10. The legislative history of WIS. STAT. § 346.63(1)(am) also shows that the legislature meant to enact a strict liability statute. A Wisconsin Legislative Council memo regarding 2003 Wis. Act 97, which enacted § 346.63(1)(am), stated that the intent was to remove the requirement that someone was "under the influence" of the restricted controlled substance in the blood such that "[e]vidence of a detectable amount is sufficient." Wisconsin Legislative Council Act Memo, 2003 Wis. Act 97, Operating Vehicle or Going Armed With a Detectable Amount of a Restricted Controlled Substance (Dec. 16, 2003), https://docs.legis.wisconsin. gov/2003/related/lcactmemo/ab458.pdf. The legislature established liability based only on a detectable amount of the restricted controlled substance in the blood, regardless of impairment. There is no indication that the legislature meant to require the State to prove the additional element of intent.

### c. Related Statutes

¶ 11. The legislature's intent to create a strict liability crime is further demonstrated by the fact that

444

other subsections in Wis. Stat. § 346.63 do not require a showing of state of mind. Under § 346.63(1)(b), the State is required to prove that a defendant operated a motor vehicle and that the defendant had a prohibited alcohol concentration. There is no required showing of intent. Likewise, under § 346.63(2m), the State must show that the driver has not yet attained the legal drinking age and has some alcohol in his or her blood. There is no requirement that the State show the person knowingly consumed the alcohol. Finally, under § 346.63(7)(a)1., driving a commercial vehicle with any alcohol concentration is also punishable, whether or not the driver intended to consume alcohol. All of these statutes are examples of related strict liability statutes.

### d. Law Enforcement Practicality

¶ 12. The legislature added Wis. Stat. § 346.63(1)(am) in 2003 because "[i]t is often difficult to prove that a person who has used a restricted substance was 'under the influence' of that substance." Legislative Council Memo, *supra,* at 1. The legislature intended to make it easier to prove operation with a restricted controlled substance in the blood by eliminating the need for the State to prove intoxication. Requiring the State to prove intent would run contrary to the stated goal to ease difficult proof requirements.

### e. Protection of the Public from Harm

¶ 13. Drugged driving is a serious threat to public safety. Studies estimate that a significant portion of traffic deaths involve drugged driving. *See, e.g.,* Institute for Behavior and Health, Public Policy State-

ment, *IBH Public Policy Statement Regarding Drugged Drivers,* www.druggeddriving.org/pdfs /IBHPublic PolicyonDruggedDriving715.pdf (last visited Apr. 24, 2014) (estimating twenty percent of car crashes are caused by drugged driving); Centers for Disease Control and Prevention, *Impaired Driving: Get the Facts,* http://www.cdc.gov/Motorvehiclesafety /Impaired_Driving/impaired-drv_factsheet.html (last visited Apr. 24, 2014) (indicating about eighteen percent of motor vehicle driver deaths involve drugs other than alcohol); ROBERT L. DUPONT, M.D., *DRUGGED DRIVING RESEARCH: A WHITE PAPER* 4 (Mar. 31, 2011), http://stopdruggeddriving.org/pdfs /DruggedDrivingAWhitePaper.pdf (reporting that one-third of fatally injured drivers with known test results tested positive for drugs). The need to protect the public from drugged driving is great.

### f. Severity of the Punishment

¶ 14. The penalty for first-offense operating a motor vehicle with a restricted controlled substance in the blood is a civil forfeiture. WIS. STAT. § 346.65(2)(am)1. Subsequent violations carry potential jail time, *see* § 346.65(2)(am)2.-7., and accidents causing great bodily harm carry potential imprisonment, *see* WIS. STAT. §§ 940.25(1)(am), 939.50(1)(f) & (3)(f).

¶ 15. These factors demonstrate that the legislature intended to allow the State to convict people of operating a motor vehicle with a restricted controlled substance in the blood without having to prove that the person knowingly ingested the substance. There is no ambiguity in WIS. STAT. § 346.63(1)(am): it is a strict liability statute.

446

### 3. Luedtke Has Failed to Meet His Burden to Show that His Due Process Rights Were Violated.

¶ 16. No person shall be deprived of "life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1; *see also* WIS. CONST. art. I, §§ 1, 8. The Due Process Clause embodies a substantive component "that bars certain arbitrary, wrongful government actions." *State v. Radke*, 2003 WI 7, ¶ 12, 259 Wis. 2d 13, 657 N.W.2d 66 (citation omitted). "Substantive process forbids a government from exercising 'power without any reasonable justification in the service of a legitimate governmental objective.'" *Id.* (citation omitted). In response to a substantive due process challenge, this court examines "whether the statute is a reasonable and rational means to the legislative end." *State v. Smet*, 2005 WI App 263, ¶ 11, 288 Wis. 2d 525, 709 N.W.2d 474.

¶ 17. This court already concluded that WIS. STAT. § 346.63(1)(am) does not violate substantive due process. *Smet*, 288 Wis. 2d 525, ¶ 1. In *Smet*, we held that in enacting § 346.63(1)(am), the legislature determined that public safety is endangered when a person operates a motor vehicle with a detectable amount of a restricted controlled substance in his or her blood. *Smet*, 288 Wis. 2d 525, ¶ 13. The court found it reasonable to punish every person who drove with a detectable amount of a restricted controlled substance in the blood, regardless of impairment. *Id.*, ¶ 16. In addressing the problem of drugged driving, the legislature could have reasonably and rationally concluded that "proscribed substances range widely in purity and potency and thus may be unpredictable in their duration and effect." *Id.*, ¶ 17. Furthermore, because no reliable measure of impairment exists for many illicit drugs, the legislature reason-

ably could conclude that the more prudent course was to ban any amount in the driver's system. *Id.* Ultimately, in *Smet*, this court was "satisfied that prohibiting operation of a motor vehicle while having a detectable amount of a restricted controlled substance in one's blood bears a reasonable and rational relationship to the purpose or objective of the statute, and that the statute is not fundamentally unfair." *Id.*, ¶ 20. Section 346.63(1)(am) presents "no due process violation." *Smet*, 288 Wis. 2d 525, ¶ 20. While *Smet* addressed the absence of an impairment requirement, the rationale is equally applicable to the lack of a scienter requirement. Section 346.63(1)(am) is a reasonable and rational means for the legislature to address a serious societal harm. The legislature could rationally conclude that a strict liability, zero-tolerance approach is the best way to attack the problem of drugged driving.

¶ 18. Other states have reached the same conclusion in upholding strict liability statutes prohibiting drugged driving. *See, e.g.* National Conference of State Legislatures, *Drugged Driving Per Se Laws,* http://www.ncsl.org/documents/transportation/persechart.pdf (last visited May 5, 2014) (showing states with per se laws forbidding any presence of a prohibited substance in the driver's body).

¶ 19. Luedtke argues that the statute can impermissibly punish someone who accidentally ingests cocaine. Luedtke, however, does not directly argue that he accidentally ingested cocaine. Furthermore, Luedtke cites studies showing that cocaine is present on currency and in lakes, but does not explain how such environmental exposure to cocaine could result in a positive blood test for the substance. Luedtke failed to establish beyond a reasonable doubt that the statute is unconstitutional.

*B. The Trial Court Properly Denied Luedtke's Motion to Suppress.*

1. Standard of Review

¶ 20. Luedtke moved to suppress the blood test results, arguing that the destruction of the blood samples and his attendant inability to retest the samples violated his right to due process. Whether the destruction of the samples constitutes a violation of due process is a question of law that we review de novo. *Neumann*, 348 Wis. 2d 455, ¶ 32.

2. Due Process Requirements

¶ 21. Due process requires that the prosecution turn over material exculpatory evidence. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988); *State v. Greenwold*, 181 Wis. 2d 881, 885, 512 N.W.2d 237 (Ct. App. 1994) (*Greenwold I*). However, the United States Supreme Court has been unwilling to "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58. To prevail on a due process challenge regarding the destruction of potentially exculpatory evidence, the defendant must show that the evidence was apparently exculpatory at the time it was destroyed or that it was destroyed in bad faith. *State v. Greenwold*, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994) (*Greenwold II*). Bad faith can only be shown if "(1) the officers were aware of the potentially exculpatory value or usefulness of the

evidence they failed to preserve; *and* (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence." *Id.* at 69.

¶ 22. Luedtke does not argue that the blood sample was destroyed in bad faith. Rather, Luedtke argues that Wisconsin courts should recognize a broader protection for a defendant's due process rights than that afforded by *Youngblood* and relax the *Youngblood* bad faith standard.

¶ 23. The Wisconsin Court of Appeals adopted the *Youngblood* standard in *Greenwold I*, 181 Wis. 2d at 881, and we are bound by that precedent, *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997) (only supreme court can modify court of appeals precedent). In *Greenwold II*, we expressly rejected the argument that a defendant in an evidence destruction case would be afforded more protection under the Wisconsin Constitution than under the United States Constitution. *Greenwold II*, 189 Wis. 2d at 71.

¶ 24. Applying *Youngblood* to this case, Luedtke has not shown a due process violation. First, he makes no showing that the evidence was apparently exculpatory at the time of its destruction. Indeed, the sample that was destroyed was inculpatory—it had been tested and showed the presence of restricted controlled substances in Luedtke's blood. Second, Luedtke does not argue that the evidence was destroyed in bad faith.

¶ 25. Prior Wisconsin Supreme Court precedent supports the conclusion that the destruction of the blood sample did not violate due process. Before the

United States Supreme Court's *Youngblood* decision, in both *State v. Disch*, 119 Wis. 2d 461, 351 N.W.2d 492 (1984), and *State v. Ehlen*, 119 Wis. 2d 451, 351 N.W.2d 503 (1984), our supreme court rejected the defendants' arguments that their due process rights were violated when their blood samples were no longer available for retesting. *See Disch*, 119 Wis. 2d at 478 ("No duty devolves upon the district attorney to preserve or maintain a quantity of a blood sample in order that a defendant may retest the blood . . . nor does due process require the retention and production of the sample."); *see also Ehlen*, 119 Wis. 2d at 453 ("The importance of the production of the original breath ampoule or a portion of the blood sample as the *sine qua non* of due process is a myth that should not be perpetuated."). Due process is afforded by the disclosure of the blood test results and the right to cross-examine witnesses regarding the accuracy and credibility of the analysis. *Disch*, 119 Wis. 2d at 463, 477–79. Furthermore, a defendant's due process rights are safeguarded by the opportunity to obtain an additional test at the time of the arrest. *Id.* at 462–63; *see also Ehlen*, 119 Wis. 2d at 452–53.

¶ 26. Luedtke was able to confront and cross-examine all persons in the chain of custody as well as those persons who performed the tests on his blood sample. Additionally, the court allowed Luedtke to examine the State's witness regarding the destruction of the blood sample. Luedtke was informed of his ability to have a second or alternative test conducted at the time of the blood draw.

¶ 27. Finally, Luedtke argues that if the destruction of the blood sample does not require dismissal or suppression, "perhaps" the case should be remanded for a new trial at which the jury would be instructed that the destruction of the evidence allows an inference

against the State. Luedtke himself admits that the "remedy to be applied when the state impermissibly destroys potentially exculpatory evidence is unclear." We need not address this argument because Luedtke has made no showing that the destruction of the blood sample was impermissible.

*C. Luedtke Did Not Receive Ineffective Assistance of Counsel and There Is No Need for a New Trial.*

1. Ineffective Assistance of Counsel

¶ 28. In conjunction with his two main arguments that he was denied due process by the strict liability statute and by the destruction of the blood sample, Luedtke argues that he was rendered ineffective assistance of counsel because his trial counsel did not put forth these due process arguments below. To show ineffective assistance of counsel, Luedtke must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We have rejected Luedtke's due process arguments. Therefore, Luedtke's attorney could not have rendered ineffective assistance of counsel for failing to raise these arguments below. *See State v. Maloney*, 2005 WI 74, ¶ 37, 281 Wis. 2d 595, 698 N.W.2d 583 (counsel does not render ineffective assistance for failing to bring motion that would have been denied).

2. New Trial in the Interest of Justice

¶ 29. Finally, Luedtke argues that we should grant him a new trial in the interest of justice. We have

the discretion to grant a new trial when the real controversy has not been tried or it is probable that there has been a miscarriage of justice. *State v. Bannister*, 2007 WI 86, ¶ 40, 302 Wis. 2d 158, 734 N.W.2d 892. The real controversy was whether Luedtke operated a motor vehicle with a detectable amount of a restricted controlled substance in his blood. This question was addressed and resolved below. We see no miscarriage of justice.

*By the Court.*—Judgment and order affirmed.