COURT OF APPEALS
DECISION
DATED AND FILED

December 30, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP339**

Cir. Ct. No. **2021TR2416**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

COUNTY OF MONROE,

   PLAINTIFF-RESPONDENT,

V.

CHRISTIAN WAYNE KLING,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Monroe County: TODD L. ZIEGLER, Judge. *Affirmed*.

¶1      GRAHAM, J.[1]   Christian Kling, pro se, appeals the circuit court's entry of a civil forfeiture judgment, following a bench trial, finding Kling guilty of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(g) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

failing to notify law enforcement of a single-vehicle accident in violation of WIS. STAT. § 346.70(1). Under that statute, if the operator of a motor vehicle is involved in an accident resulting in total damage to property owned by any one person to an apparent extent of $1,000 or more, the operator must immediately notify law enforcement of the accident by the quickest means of communication. *See* § 346.70(1). Kling challenges the sufficiency of the evidence used to prove that his vehicle was damaged to an apparent extent of $1,000 or more. I reject Kling's arguments and affirm.

## BACKGROUND

¶2     The following summary of facts is derived from the evidence introduced at the bench trial and the circuit court's findings of fact.

¶3     Around 3:00 p.m. on April 7, 2021, Kling was travelling home from work in his 2005 Mustang when he veered to the side of the road, hit a mailbox, overcorrected his steering, and drove into a ditch. Kling's vehicle sustained damage, the extent of which was disputed at trial. Kling was unable to drive his vehicle out of the ditch, presumably because the tires on the passenger side had popped off their rims and possibly because the vehicle was grounded out in the mud and dirt.

¶4     Kling emerged from his vehicle unharmed. Bystanders gathered on the side of the road to render assistance, including a volunteer firefighter and emergency medical technician named Donald Brown. Kling asked Brown for a ride, and Brown refused. Brown asked Kling whether he had called law enforcement, and Kling said he had not. Brown left the scene to call in the accident, and when he returned, he saw Kling being driven away as a passenger in another vehicle. Brown believed that Kling was violating the law by leaving the

scene of the accident, and he attempted to chase down the departing vehicle to obtain its license plate.

¶5    Twelve minutes after Brown's call to law enforcement, Deputy Matthew Hoskins arrived at the scene. When Hoskins arrived, Kling and the other bystanders were gone. Hoskins observed the damage to Kling's vehicle and to the mailbox of a nearby property owner. Hoskins knocked on the property owner's door to inform her of the damage to her mailbox, and he called for a tow truck to remove Kling's vehicle.

¶6    Meanwhile, Kling arrived at his residence. Upon arrival, he charged his cell phone, called for a tow truck, and called law enforcement. Kling was transferred to Deputy Hoskins, who was still at the scene. Kling's call to law enforcement occurred approximately 34 minutes after Brown's initial call.

¶7    Robert Larkin, the tow truck driver that Kling called, arrived at the scene of the accident shortly thereafter. Larkin towed Kling's vehicle to his shop. Shop employees reattached the tires to the rims, inflated them, and checked for any oil leaks, but they did not assess or estimate the cost of any needed bodywork. The vehicle remained at Larkin's shop for two days, after which Kling and his girlfriend picked it up and drove it home.

¶8    Following the accident, law enforcement issued Kling a traffic citation for failing to report an accident in violation of WIS. STAT. § 346.70(1).[2]

---

[2] Law enforcement also issued Kling a citation for failure to keep his vehicle under control in violation of WIS. STAT. § 346.57(2). The circuit court dismissed that citation because it determined that the County did not meet its burden of proof. That determination is not a subject of this appeal, and I discuss it no further.

Kling challenged the citation and the case proceeded to a bench trial held over Zoom, during which Kling represented himself.

¶9      To establish a violation of WIS. STAT. § 346.70, the County was required to prove that:  (1) Kling was the operator or occupant of a vehicle involved in an accident; (2) the accident resulted in total damage to property owned by any one person to an apparent extent of $1,000 or more; and (3) Kling failed to immediately give notice of the accident to law enforcement by the quickest means of communication.  *See City of Rhinelander v. Wakely*, No. 2015AP302, unpublished slip op. ¶¶7 & n.5, 8, (WI App Mar. 8, 2016) (noting three elements).[3]

¶10     Kling's defense centered on the second element—he argued that he was not required to report the accident because it was not apparent to him that his vehicle had sustained at least $1,000 of damage.[4]  I now summarize the relevant trial testimony and exhibits, focusing on any evidence relating to the apparent extent of the damage to Kling's vehicle.

¶11     Brown was the County's first witness, and his testimony focused on his actions on the day of the accident.  Brown acknowledged that he never told Kling to stay at the scene of the accident or to report it, but Brown testified that it is "common sense to not leave the scene of the accident."  Brown provided no testimony about the nature or extent of the damage to Kling's vehicle.

---

[3] I cite this authored, unpublished, one-judge opinion for its persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

[4] Kling also challenged the third element—that is, that he failed to immediately give notice of the accident to law enforcement by the quickest means of communication.  Kling does not renew his challenge to this element on appeal, and I address it no further.

¶12    The County also called the owner of the damaged mailbox to testify. She testified that, the day after the accident, Kling arrived at her home to replace it with a mailbox of her choice. It is undisputed that the cost of replacing the mailbox did not exceed $1,000. The owner of the mailbox provided no testimony regarding the nature or extent of the damage to Kling's vehicle.

¶13    Deputy Hoskins was the sole witness for the County to provide any evidence about the nature and extent of the damage to Kling's vehicle. Hoskins testified that he had worked in law enforcement for 25 years, and that he had been a deputy with the sheriff's department for the past seven. Hoskins testified that, over his career, he had responded to thousands of accidents and had written thousands of accident reports.[5]

¶14    During Hoskins' testimony, the County played portions of the footage from his body camera, which showed Kling's vehicle positioned in the ditch. Overall, the vehicle appeared largely intact, with no fluids visibly leaking. The driver's side of the vehicle looked to have sustained no visible damage. On the passenger side, both tires were deflated, and the side panel appeared to have sustained some damage. The footage does not show any visible damage to Kling's bumper; however, it shows Hoskins retrieving a piece of dislodged bumper trim that was lying on the ground.

---

[5] Hoskins also testified that he had training and expertise in investigating accidents, and that he had attended accident reconstruction school. Although such expertise may have been relevant to Hoskins' testimony about the cause of the accident, I do not see any obvious link between the expertise Hoskins had in accident reconstruction and his opinion on the cost of repairs for the vehicle damage he observed.

¶15     As far as the damage to Kling's vehicle, Hoskins testified that it was inoperable and had sustained the following damage: "you have both the tires [on the passenger side] peeled off [their rims], [and] you have damage all along the passenger side, you have a lot of front end damage and the vehicle's leaking." Hoskins testified that, based on the damage he observed, "that's way over the threshold of $1,000." The only specific cost estimate Hoskins provided was for replacing the bumper—he testified that, based on his personal and professional experience, "you can just about estimate, you know, any vehicle bumper … replacement is going to be approximately $1,000 plus, give or take."

¶16     Kling called the tow truck driver, Larkin, as his first witness. Larkin testified that he did not observe any leakage when he towed Kling's vehicle on the date of the accident, and that, had the vehicle been leaking fluids, the fluids would have been noticeable on the bed of his tow truck. Larkin opined that the vehicle was "drivable other than a flat tire." Larkin guessed that his shop charged Kling "a couple hundred dollars, between towing and putting the tire back on the rim and checking it over." Consistent with Larkin's testimony, Kling introduced a receipt showing that the shop checked for leakage and found none, and indicating that the total cost of towing the vehicle and repairing the tires was $200.45. Larkin did not recall whether the vehicle had sustained body damage, and he acknowledged that his shop does not do body repairs and that it did not and could not estimate the cost of any body damage to Kling's vehicle.

¶17     Kling's girlfriend testified that she observed the vehicle at Larkin's shop following the accident. As far as the damage she observed, she testified that "the tires were off and the side panel was off, and the front bumper." She testified that she checked for leaks at the shop and did not observe any. She also saw Kling

check the vehicle's fluid levels and confirm that the levels were full following the accident.

¶18 Kling then presented his own testimony. He testified that he did not believe that his vehicle had sustained at least $1,000 of damage and did not believe that he had to report the accident to law enforcement. According to Kling, the reason he ultimately chose to call law enforcement was to "let them know that [his vehicle] was there, [that he was] okay, and that [he would] retrieve [his] vehicle."

¶19 As far as the damage to his vehicle, Kling testified that his vehicle was not leaking following the accident. Kling observed that both passenger side tires were "knocked off the rims," and he observed a big hole in the bumper where the bottom trim popped off the bumper. Kling believed the only "major" damage he sustained was to his bumper. Kling acknowledged an issue with the "side piece," but he testified that, with the use of some "body tabs," the panel would "just pop[] back into place."

¶20 As far as the cost of repairing his vehicle, Kling testified that he knew he was "out 450 bucks, maybe 500 bucks" for the bumper because he had "repaired that same bumper" in 2017. He testified that, for the 2017 repair, he had purchased the part for $80 on eBay, and that he paid a body shop $480 to install and paint it. Kling presented receipts corroborating those charges. He acknowledged that prices have increased since 2017, and presented evidence showing that, at the time of the trial, he could purchase a comparable bumper part on eBay for $146.91. Kling provided no estimate for the cost of repairing the side panel. He acknowledged that he had not had any of that bodywork repaired by the

time of trial, but he testified that, in his opinion, the total cost of repairing the damage to his vehicle would be approximately $500-$600.

¶21  At the close of evidence, the circuit court issued an oral ruling in which it determined that the County had proven by clear and satisfactory evidence that Kling was guilty of failing to report an accident under WIS. STAT. § 346.70(1).

¶22  In explaining this decision, the court indicated that "the issue for me is really whether or not it was apparent that there was $1,000 or more of damage." The court determined that it could not find that "there was or wasn't a leak." Hoskins' testimony that there had been a leak was "a good guess," and based on the position of the vehicle, "there very well could have been leaks." However, the court stated that it was not sure that "anyone," including Kling or presumably Hoskins, "could assess at [the scene of the accident] whether there [were] or [weren't] any leaks." The court did not make any express findings regarding the cost of repairing any specific part of the vehicle that had been damaged. Instead, it found that Hoskins "was confident [the total damage] was much more than $1,000" based on his experience with responding to accidents over the years and "maybe even car repairs of his own," and the court appeared to credit Hoskins' testimony.

¶23  Ultimately, the court stated that it was satisfied that the County "met its burden that the apparent damage to the vehicle, when you add in the mailbox as well, and even without the mailbox, exceeds $1,000."

## DISCUSSION

¶24  On appeal, Kling asserts that the evidence presented at trial was insufficient to meet the County's burden to prove that he violated WIS. STAT.

§ 346.70(1). More specifically, he argues that the County failed to prove that the total damage from the accident to any one person's property was to an apparent extent of $1,000 or more.

¶25 Kling's sufficiency of the evidence argument turns on the proper interpretation and application of WIS. STAT. § 346.70(1). *State v. Schutte*, 2006 WI App 135, ¶15, 295 Wis. 2d 256, 720 N.W.2d 469. I therefore begin by interpreting the text of § 346.70(1) to identify what the County was required to prove at trial. I then apply that legal standard to the trial evidence to determine whether it was sufficient to sustain the judgment.

¶26 "[S]tatutory interpretation begins with the language of the statute." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (internal quotation marks and quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning," *id.*, and must be "interpreted in the context in which it is used, not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. The interpretation and application of a statute to undisputed facts is a question of law, which I review independently of any determination made by the circuit court. *State v. Grandberry*, 2018 WI 29, ¶11, 380 Wis. 2d 541, 910 N.W.2d 214.

¶27 As mentioned above, WIS. STAT. § 346.70(1) applies to accidents resulting in "total damage to property owned by any one person … to an apparent extent of $1,000 or more." The statute further defines "total damage to property owned by any one person" to mean "the sum total cost of putting the property damaged in the condition it was before the accident, if repair thereof is

practical[.]" ***Id.*** I discern the following principles based on this statutory language.

¶28 First, the apparent purpose of this portion of the statute is to provide a bright-line rule establishing when accidents that cause property damage but no injury must be reported, and to relieve owners and operators of the obligation to report accidents that result in property damage that is relatively minor.[6]

¶29 Second, an accident like Kling's must be reported only if the total damage to *any one person's* property appears to equal or exceed $1,000. WIS. STAT. § 346.70(1). That is, the operator of a vehicle who causes $900 in apparent damage to their vehicle and $200 in apparent damage to a different person's

_____

[6] WISCONSIN STAT. § 346.70(1) also contains provisions that apply if any person is injured or killed in the accident, or if government-owned property is damaged in the accident. Section 346.70(1) provides in full:

> The operator or occupant of a vehicle involved in an accident resulting in injury to or death of any person, any damage to state or other government-owned property, except a state or other government-owned vehicle, to an apparent extent of $200 or more, or total damage to property owned by any one person or to a state or other government-owned vehicle to an apparent extent of $1,000 or more shall immediately by the quickest means of communication give notice of such accident to the police department, the sheriff's department or the traffic department of the county or municipality in which the accident occurred or to a state traffic patrol officer. In this subsection, "injury" means injury to a person of a physical nature resulting in death or the need of first aid or attention by a physician or surgeon, whether or not first aid or medical or surgical treatment was actually received; "total damage to property owned by one person" means the sum total cost of putting the property damaged in the condition it was before the accident, if repair thereof is practical, and if not practical, the sum total cost of replacing such property. For purposes of this subsection if any property which is damaged is held in a form of joint or multiple ownership, the property shall be considered to be owned by one person.

In this case, it is undisputed that no one was injured in the accident, and that the accident did not involve state or other government-owned property. I therefore discuss those provisions of WIS. STAT. § 346.70(1) no further.

10

mailbox is not required to report the accident because the damage to any one person's property is not to an apparent extent of $1,000 or more.

¶30     Third, based on WIS. STAT. § 346.70(1)'s definition of "total damage to property," the apparent extent of the damage from an accident is calculated as the cost of repairing the damaged property to the condition it was in before the accident, but not better.  That is, if a vehicle was damaged before the accident, the apparent extent of damage to the vehicle would be the cost of restoring it to its imperfect pre-accident condition.  And, if the vehicle was equipped with after-market parts, the apparent extent of damage to the vehicle would be the cost of replacing the after-market parts with similar after-market parts.

¶31     With these principles in mind, I consider the undefined term "apparent."  The meaning of this term is important because the proper application of the statute turns on the "apparent extent" of total property damage.  And the parties' arguments raise additional questions about the point in time at which the damage must be apparent, and to whom it must be apparent.

¶32     The common thread of multiple dictionary definitions is that "apparent" means a condition that is visible to the eyes and easily seen, but

11

possibly unconfirmed.[7] From these definitions, I conclude that, as used in WIS. STAT. § 346.70(1), the term apparent refers to damage that is visible and obvious, whether or not that damage is borne out by later inspection and testing. Conversely, any speculative or latent damage is not apparent under § 346.70(1). Likewise, any damage that would require specialized training or expertise to identify is not apparent.

¶33 As for the point in time at which damage must be apparent, I conclude that, consistent with the purpose of the statute and the common meaning of apparent, the "apparent extent" of the damage must be measured at the time of the accident. Although a fact finder may consider after-the-fact estimates of repair costs when assessing the apparent extent of the damage at the time of the accident, such estimates are not dispositive. Accordingly, an operator would violate the statute by failing to report an accident that, at the time of the accident, appeared to have caused more than $1,000 of damage, even if it actually required only $900 to repair. Likewise, an operator would not violate the statute by failing to report an accident that actually resulted in $1,100 in repair costs for a given vehicle,

---

[7] For example, The Oxford English Dictionary defines "apparent" as "meeting the eyes, showing itself; open to sight, visible, plainly seen." *Apparent*, THE OXFORD ENGLISH DICTIONARY 598 (2d. ed. 1989). Black's Law Dictionary defines "apparent" as "that which is obvious, evident, or manifest," "open to view," "plain," and "patent." *Apparent*, BLACK'S LAW DICTIONARY (6th ed. 1990). Webster's New College Dictionary defines "apparent" as "easily seen: visible"; "easily understood: obvious"; "appearing as such but not necessarily so." *Apparent*, WEBSTER'S NEW COLLEGE DICTIONARY (2d ed. 1998) Cambridge Dictionary defines "apparent" as "seeming to exist or be true." *Apparent*, https://dictionary.cambridge.org/us/dictionary/english/apparent (last visited Dec. 12, 2022). And, Webster's Third New International Dictionary, defines "apparent" as "readily manifest to the senses or mind as real or true and supported by credible evidence of genuine existence but possibly distinct from or contrary to reality or truth." *Apparent*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 1993).

provided that the apparent extent of the damage at the time of the accident was less than $1,000.

¶34    Finally, I consider to whom the extent of damage must be apparent. Kling suggests that the extent of the damage must be apparent to the operator of the vehicle, but I disagree. On its face, WIS. STAT. § 346.70(1) appears to be a strict liability statute that does not require proof of the operator's subjective knowledge or intent.[8]    Instead, the term "apparent extent" incorporates an objective reasonable person standard. Accordingly, I conclude that the extent of the total damage must be apparent to a reasonable person of ordinary intelligence and experience who is aware of information known to the operator and facts that are visible and obvious at the scene of the accident. Any subjective assessment of the extent of the damage by the operator of the vehicle—or by any other witness on the scene, for that matter—may be relevant evidence, but it is not dispositive.

¶35    In sum, considering all of the language of WIS. STAT. § 346.70(1), I conclude that an operator of a vehicle must report an accident when it would be obvious to a reasonable person in the operator's position, at the time of the accident, that the total cost of repairing the visible damage to any one person's

---

[8] "There are several factors a court may look to when deciding whether the legislature meant to impose strict liability, including: (1) the language of the statute; (2) legislative history; (3) related statutes; (4) law enforcement practicality; (5) protection of the public from harm; and (6) severity of punishment." *State v. Luedtke*, 2014 WI App 79, ¶8, 355 Wis. 2d 436, 851 N.W.2d 837. And here, those factors weigh in favor of reading WIS. STAT. § 346.70(1) as a strict liability statute: § 346.70(1) nowhere mentions an operator's knowledge or intent; the penalty imposed for violations of § 346.70(1) is a civil forfeiture of "not less than $200 nor more than $500 for the first offense," *see* WIS. STAT. § 346.74(2g); like many traffic regulations, its purpose is public-safety oriented; and, enforcement would be impracticable if prior to writing a ticket, an officer was required to ascertain a particular operator's familiarity with vehicle repairs in order to determine whether it was "apparent" to a particular operator that the extent of the damage exceeded $1,000. *See id.* Thus, an operator may violate the statute even though it was not apparent to the operator that the extent of the damage would cost $1,000 to repair or replace.

property to as good of a condition as before the accident equals or exceeds $1,000. Although the parties do not specifically discuss whether the apparent extent of damage is a question of law or fact, I conclude that it is a question of fact. *See, e.g.*, **Keithley v. Keithley**, 95 Wis. 2d 136, 138, 289 N.W.2d 368 (Ct. App. 1980) (providing that, in a different context, the amount of damages is considered to be a question of fact).

¶36    Applying this legal standard, I now assess whether the evidence was sufficient to sustain the circuit court's finding that the apparent extent of the damage to Kling's vehicle exceeded $1,000.[9]  In this case, the circuit court made its finding following a bench trial.  Under such circumstances, the court's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial judge to judge the credibility of witnesses." WIS. STAT. § 805.17(2).

¶37    On appeal, Kling takes the position that the trial evidence was insufficient and the judgment against him should be reversed because it was "apparent to [him]" that the cost to repair the damage to his vehicle was less than $1000.  According to Kling, he demonstrated that his assessment was reasonable by providing documentary proof that the total cost to repair his vehicle would be only $760.45.  This total is comprised of $80 to purchase a bumper on eBay, $480 to install and paint it, and $200.45 for the tow and tire work.  There are several problems with Kling's argument.

---

[9] The circuit court initially appeared to include the damage to the mailbox in its assessment of the apparent extent of total damage.  However, the court immediately corrected itself, clarifying that, "even without the mailbox," the apparent extent of the damage to Kling's vehicle "exceeds $1,000."

¶38     First, as discussed above, the question is not whether it was apparent to Kling that the damage exceeded $1,000. And, after-the-fact estimates and bills are not dispositive. The pertinent question is whether it would have been apparent that the visible damage was at least $1,000 to a reasonable person of ordinary intelligence and experience who is aware of the facts known to the operator at the scene of the accident.

¶39     Second, the circuit court was not required to credit Kling's testimony and evidence about his repair costs. That is particularly true here, where his estimate of the bumper work was based on data points that were several years old, and his total cost assessment did not account for the full extent of the damage testified to by other witnesses. Specifically, Deputy Hoskins testified that there was "damage all along the passenger side," and Kling and his girlfriend both acknowledged an issue with the side panel during the trial.[10] Accordingly, the circuit court did not err when it discredited Kling's estimate of the apparent extent of the total damage to his vehicle.

¶40     Having addressed Kling's arguments to the contrary, I conclude that the evidence was sufficient for the circuit court to conclude that there was clear and convincing evidence that the apparent extent of the damage was at least $1,000. Specifically, the court could have credited Hoskins' testimony that the visible damage was "way over … $1,000," and that, in his experience, the cost of replacing a bumper alone is "going to be approximately $1,000 plus, give or take." Kling does not address this testimony from Hoskins on appeal and, apart from the

---

[10] Although Kling now informs me in his appellate brief that he was able to reaffix the side panel using panel tabs he purchased for $10, he did not present that testimony during the trial, and it is not part of my assessment of the sufficiency of the evidence on appeal.

arguments I have already rejected, Kling does not provide any argument that the circuit court erred in crediting Hoskins' testimony. Generally speaking, it is up to the circuit court to assess the credibility of witnesses, and appellate courts do not second guess such assessments on appeal. *See Welytok v. Ziolkowski*, 2008 WI App 67, ¶28, 312 Wis. 2d 435, 752 N.W.2d 359 ("When there is conflicting testimony, the circuit court is the ultimate arbiter of the witnesses' credibility."). Kling does not demonstrate that the court's finding of fact, which was based on Hoskins' testimony, was clearly erroneous.

For all of these reasons, I reject Kling's arguments and affirm the judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.